The taxpayer contends that its invested capital should be reduced only by the amount of its depreciation reserve as the same appears on its books and which contains only the depreciation claimed by it and allowed by the Commissioner for the years 1914, 1915, and 1916. For the years prior to 1914 no depreciation account was set up on its books. It contends that the depreciation claimed by it on its tax returns and allowed by the Commissioner in the years 1909 to 1913, inclusive, can not be added to its depreciation reserve. The taxpayer does not contend that the amount of depreciation which it claimed and which was allowed to it by the Commissioner was in any year incorrect, and we therefore assume that it actually sustained in all years the amount of depreciation which the Commissioner allowed.

Where it exists, earned surplus is included in and becomes part of the invested capital of a corporation. Earned surplus can not be accurately determined without due allowance for depreciation. It follows logically that, to the extent that this corporation had an earned surplus on December 31, 1917, such earned surplus, before being added to the other elements of invested capital, should be reduced by any depreciation sustained by the corporation and not already deducted in computing the earned surplus. No other element of invested capital may be reduced by depreciation. In the event the total depreciation sustained by this taxpayer exceeds the earned surplus of the corporation in the year in question, the invested capital of the corporation may not be reduced by the amount of such excess.

The taxpayer also contends that the appreciation of its assets from 1909 to 1913, inclusive, more than equaled its sustained depreciation and that, therefore, its invested capital should not be reduced on account of depreciation allowed.

That unrealized appreciation may not be included in invested capital is no longer an open question. *La Belle Iron Works* v. *United States*, 256 U. S. 377.

---

## APPEAL OF CHARLES HENRY MATTLAGE.

Docket No. 2116. Submitted May 19, 1925. Decided December 23, 1925.

*C. J. McGuire* and *J. Marvin Haynes, Esqs.*, for the taxpayer.
*Willis D. Nance, Esq.*, for the Commissioner.

Before IVINS,[1] MARQUETTE, and MORRIS.

This appeal is from the determination of a deficiency in income tax for the year 1919 in the amount of $5,115.12. Three questions

---

[1] This decision was prepared during Mr. Ivins's term of office.

are presented: (1) The amount of salary received by the taxpayer in 1919; (2) the deductibility of an alleged bad debt; and (3) the deductibility of the amount paid to an accountant for services in connection with the rendering of the Federal tax return.

### FINDINGS OF FACT.

The taxpayer is a resident of New York City. He reported his income for taxation on the cash receipts and disbursements basis for the calendar year 1919.

During the years 1913 to 1920, both inclusive, the taxpayer was president and a member of the board of directors of Charles F. Mattlage & Sons, a corporation organized under the laws of the State of New York, the other directors being the taxpayer's son-in-law and one Henry A. Gaede, who, together with the taxpayer, was an executor of the estate of the taxpayer's father.

Throughout the years 1918 and 1919, the taxpayer owned 674 shares of the voting stock of said corporation out of a total of 3,500 shares issued and outstanding. The voting control of 2,383 shares was exercised by the taxpayer and the said Henry A. Gaede, as executors of the estate of the taxpayer's father. Of the remaining shares, 50 were owned by the taxpayer's wife, 191 by his son-in-law, 150 by his daughter, 1 by his brother-in-law, and 1 by the said Henry A. Gaede.

The books of account of said Charles F. Mattlage & Sons were kept on the basis of a fiscal year ending on the 30th day of April.

During the period that the taxpayer was president, he directed all the activities of the corporation. It was agreed by all of the directors of the corporation that the taxpayer, taking into consideration the net income of the corporation, should determine the amounts to be paid by the corporation to executives, including himself, and that the board of directors would ratify his decision in this respect. For the years prior to the fiscal year ended April 30, 1919, the taxpayer did so fix the amount of the salary to be paid to him by the corporation and the board of directors ratified his decision in this respect.

In accordance with the said understanding, he determined that the amount to be paid to him by said corporation as compensation for services rendered during the fiscal year ended April 30, 1919, should be $25,000, and the board of directors of said corporation, at a meeting held on June 22, 1919, ratified his decision in this respect. The said amount of $25,000 was credited to the taxpayer's account on the books of the said corporation as of April 30, 1919.

In his tax return for the calendar year 1919, there was included $8,333.33, being that part of the sum of $25,000 paid for services

rendered for the period from January 1 to April 30, 1919. The Commissioner, in determining the deficiency, included all of the said amount of $25,000 in the taxpayer's gross income for the calendar year 1919.

No money was actually paid as salary, but it was the practice of the corporation to pay all of the personal and household expenses of the taxpayer and to charge the same to his account upon the company's books, his account also being credited with his salary. No separate books of account were maintained by the taxpayer. All of his personal financial transactions went through the company's books. At December 31, 1918, there was a debit balance on the company's books against him of $7,100. At December 31, 1919, the debit balance was about $36,000. At a meeting of the company's board of directors, held on June 22, 1919, it was voted that the taxpayer give the company his note for the overdraft of $7,100. At the same meeting the directors ratified the salary of $25,000 to the taxpayer covering the company's fiscal year from May 1, 1918, to April 30, 1919.

Of the amount of $25,000 so ratified as salary for said fiscal year, the taxpayer actually received, as income during the calendar year 1919, the amount of $8,333.33. During the balance of the taxpayer's calendar year 1919, he received as salary $16,666.67.

In the year 1913, the taxpayer, as president and on behalf of the said Charles F. Mattlage & Sons, employed one Alexander E. Lawson as a bookkeeper. In 1914 said Lawson misappropriated moneys of said corporation amounting to $1,894.40. The taxpayer paid the amount of the said misappropriation to the said corporation, taking from said Lawson said Lawson's promissory note for $1,894.40, and, as collateral security, an assignment of a 20-payment life insurance policy for $2,000 on the life of said Lawson issued by the Pittsburgh Life & Trust Co. The said policy had theretofore been pledged by said Lawson as security for a loan of $328. In 1917, the liability of said Pittsburgh Life & Trust Co. under said policy was assumed by the Metropolitan Life Insurance Co. of New York. During the years 1914 to 1919, inclusive, the taxpayer paid the premiums upon said policy in the aggregate amount of $299.04.

In 1919 the said policy became paid up, and in October, 1919, the taxpayer, as assignee, received from said Metropolitan Life Insurance Co. of New York the sum of $722.55, being the cash surrender value of said policy, amounting to $1,079.70, less the loan of $328 and interest thereon of $29.15.

Thereafter, and during the calendar year 1919, the taxpayer paid $25 to one H. J. Schultz, a collection agent of 299 Broadway, New York City, for services rendered in connection with an unsuccessful attempt to collect the balance due from said Lawson.

In his return for 1919 he charged off $1,495.89, the balance of the account then owing from Lawson as a bad debt. In 1920 a judgment by consent was obtained against Lawson in a suit brought in the Pennsylvania courts, and the judgment was returned unsatisfied. The judgment was obtained for the purpose of preventing the running of the statute of limitations.

The amount of $1,495.89 represented a debt which was ascertained to be worthless and was charged off in 1919.

In 1919 the taxpayer paid $152.50 to a firm of accountants for services rendered in connection with the preparation of his individual Federal income-tax return for the year 1918.

### DECISION.

The deficiency should be computed in accordance with the foregoing findings of fact, disallowing the deduction of the $152.50. Final determination will be settled on 10 days' notice, under Rule 50.

---

## APPEAL OF LARROWE MILLING CO.

Docket No. 2733.    Submitted June 23, 1925.    Decided December 23, 1925.

*J. H. Amick*, *C. P. A.*, for the taxpayer.
*F. O. Graves*, *Esq.*, for the Commissioner.

### Before MARQUETTE and MORRIS.

This appeal is from the determination of a deficiency in income and profits taxes for the year 1918 in the amount of $31,775.48. The portion of the deficiency involved in this appeal is less than $10,000.

The questions presented are:

1. Whether expenditures made during the years 1909 to 1912, inclusive, for office furniture and equipment, and charged out of income, should be now capitalized with resulting increase in invested capital for the year 1918 and reduction in income by reason of depreciation on the amount so capitalized.

2. Whether the excessive cost of machinery, charged off as expense in 1918, should be capitalized and depreciated.

3. Whether, in disallowing the deduction as expense of the excessive cost of machinery and additions to buildings, the Commissioner made a duplication in the increase in the taxpayer's income for 1918.

### FINDINGS OF FACT.

The taxpayer is an Ohio corporation, with principal office in Detroit, Mich., and during 1918 was engaged in the manufacture and sale of feed for dairy cows.