JAMES H. CARROLL AND PATRICIA M. CARROLL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Carroll v. Commissioner
Docket Nos. 567-79, 10409-80.
United States Tax Court
T.C. Memo 1981-553; 1981 Tax Ct. Memo LEXIS 193; 42 T.C.M. (CCH) 1233; T.C.M. (RIA) 81553; September 28, 1981. *193 In 1974 petitioner sold his stock in a legal practice. He received a $ 100,000 note, payable with interest in three installments. The last installment was due in 1976. The debtor failed to make any payments on the note. Held, the note was deductible as a worthless debt in 1976. Sec. 166(a), I.R.C. 1954. Heldfurther, the note constituted a nonbusiness bad debt. Sec. 166(d). George McMillan, for the petitioners. W. Robert Abramitis, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: Respondent determined deficiencies in petitioners' Federal income taxes and an addition to tax as follows: Docket
Addition to tax under
No.
Year
Deficiency
sec. 6653(a)
567-79
1975
$ 503.53
1976
22,738.89
10409-80
1977
11,529.64
$ 576.48
These cases have been consolidated for the purposes of trial, briefing and opinion. After concessions, the only issue for our decision is whether the petitioners are entitled to a worthless debt deduction under section 166, I.R.C. 1954, in the amount of $ 100,000 for the taxable year 1976, and if so, whether such worthless debt qualifies as a business bad debt. [1] *194 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations of fact and supplemental stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioners James H. Carroll and Patricia M. Carroll, husband and wife, resided in Ft. Lauderdale, Florida at the time they filed their petitions herein. They filed joint Federal income tax returns for the calendar years 1976 and 1977. Patricia M. Carroll is a party herein solely by reason of her filing a joint return with James H. Carroll (hereinafter petitioner). In 1968 petitioner formed a partnership for the practice of law with David E. Graham (hereinafter Graham). In 1969 the partnership became a professional association. On February 14, 1969 petitioner received 175 shares of stock in the *195 professional association at a cost of $ 1 per share. On January 1, 1974 petitioner sold his interest in the professional association to Graham for $ 100,000. The purchase price was represented by an unsecured note signed by Graham for the amount of $ 100,000 and bearing an interest rate of 8 percent per year. The note provided that one-third of the principal plus accrued interest was payable on November 25, 1974, Novmber 25, 1975 and November 25, 1976. The gain on the sale of the stock was included in full by petitioners as long-term capital gain on their 1974 income tax return. However, petitioners' 1974 income tax return did not include any interest received on the note from Graham. Petitioner believed that Graham had three major financial problems during the term of the loan. First, prior to 1974 Graham had agreed to purchase a parcel of property from one Virgil Green. Green took a first mortgage on the property. After obtaining a change in zoning on the property, Graham resold the parcel at a substantial profit. As part of the selling price, Graham received a large second mortgage note. The required payments on the note in issue from Graham to petitioner were timed so *196 that they could be made from the proceeds of the second mortgage note that Graham had received on the resale of the Green property. However, the purchaser of the property defauled on the note and did not pay Graham or Green (on the first mortgage). As a result of the default, Green got the property back by a clerk's deed in August 1976. In the interim it was petitioner's understanding that Graham had used the second mortgage on the Green property as collateral on a $ 600,000 loan from Miami National Bank. Such loan was used a purchase and renovate a building in Ft. Lauderdale in which his law firm offices were located. During the real estate recession of 1974-1975, the building was not fully rented. As a result, Graham was unable to meet expenses. He then sold the building and rented it back on a master lease. Under the lease he and his law firm were personally obligated for payments. Such payment obligations created liquidity problems for Graham. Graham's third major financial problem, as perceived by petitioner during the term of the loan, was the decline of his law practice due to the recession and the fact that his law practice was heavily oriented toward real estate development. *197 A number of lawyers in his firm had to be let go during this period. After Graham missed the annual payments on the note to Carroll that were due in November 1974 and November 1975, he promised to make late payments. When the third payment came due in November 1976, Graham again did not tender the payment due and there were no further promises of future payment. Petitioner believed that Graham was virtually insolvent at that time. The recession had diminished the value of his remaining assets, most of which were heavily mortgaged, and most of the remaining assets were pledged as collateral for other loans. Graham's only substantial asset was his home, which was held jointly with his wife. Petitioner was knowledgeable about the value of notes receivable as a result of his extensive legal practice involving individuals and estates. It was his opinion that there was no market for an unsecured personal note that was in default. In fact, petitioner attempted to sell the $ 100,000 note to a local finance company. The prospective purchaser declined to purchase the note on any terms. During the course of the audit of his 1976 return, petitioner was told that he had to take every *198 legal step to collect before the debt could be considered worthless. As the audit proceeded, he feared that the statute of limitations on collection of the note would run. Although he did not want to add to Graham's problems, petitioner filed suit against Graham to collect on the $ 100,000 note, primarily because he believed that such suit was necessary in order to prove worthlessness of the note for tax purposes. In December 1979 petitioner received a judgment against Graham for the $ 100,000 (plus interest). Neither petitioner nor his attorney has been able to locate assets to satisfy the judgment. On his 1976 income tax return petitioner deducted $ 100,000 as a nonbusiness bad debt. By notices of deficiency dated October 12, 1978 (in docket No. 567-79) and March 24, 1980 (in docket No. 10409-80) respondent disallowed the claimed deduction for the taxable year 1976. In his trial memorandum, filed prior to trial, petitioner asserted that his loss should be deductible in 1976 as a business bad debt. OPINION The sole issue for our decision is whether the $ 100,000 note from Graham to petitioner was worthless in 1976 and, if so, whether such worthlessness constituted business or *199 nonbusiness bad debt. Petitioner contends that the improbability of collection on the Graham note gave rise to a worthless debt deduction in 1976. [2] *200 Further, although petitioner claimed a nonbusiness bad debt deduction on his 1976 return, in his pre-trial memorandum he raised the contention that his bad debt loss arose in connection with his trade or business. [3] Respondent urges us to reject petitioner's contentions by finding that petitioner has failed to introduce sufficient evidence to carry his burden of proving worthlessness. Section 166(a)(1) permits taxpayers a deduction for bad debts that become wholly worthless during the taxable year. With respect to noncorporate taxpayers, however, section 166(d) provides that the section 166(a) current deduction shall not apply to nonbusiness bad debts. Rather, the deduction of nonbusiness bad debts is to be accorded short-term capital loss treatment. [4] *201 The burden of proving entitlement to a worthless debt deduction is on the petitioner. Rule 142(a), Tax Court Rules of Practice and Procedure; Perry v. Commissioner, 22 T.C. 968, 973 (1954). [5] *203 To satisfy his burden, petitioner must show that the note from Graham had some intrinsic or potential value at the beginning of the year and that some identifiable event deprived the *202 note of value. [6] See Dustin v. Commissioner, 53 T.C. 491, 501 (1969), affd. 467 F.2d 47 (9th Cir. 1972); Western Products Co. v. Commissioner, 28 T.C. 1196, 1121-1122 (1957). However, obtaining judgment on a debt is not a prerequisite to deduction. A debt deducted as worthless in one year may be sued upon in a subsequent year to reduce it to judgment without affecting the deduction. Mattlage v. Commissioner, 3 B.T.A. 242, 245 (1925); 5 Mertens, Law of Federal Income Taxation, sec. 30.35 (1980). [7] The question of whether a debt is worthless in a given year is therefore one of fact, the answer to which must be gleaned from all of the facts and circumstances. Perry v. Commissioner, supra; sec. 1.166-2(a), Income Tax Regs. In the instant case, petitioner testified that it was his perception that Graham had serious financial problems during the term of the note. He further testified that Graham failed to make the payments that were due in November 1974 and November 1975. However, on both occasions *204 Graham promised late payments.We found petitioner to be a candid and forthright witness, and we found his testimony credible. We are convinced that there remained a chance of receiving payments and therefore the note was not worthless at the beginning of 1976. However, Graham neither made any payment on the 1974 and 1975 installments in 1976 nor met his obligation to pay the third installment on the note in November 1976. Furthermore, petitioner testified that Graham failed to continue to promise petitioner that he would make late payments on the note. In addition, petitioner stated that he attempted to sell the note to a local finance company, but that it rejected the proposed purchase of an unsecured personal note in default. Considering that Graham's assets were heavily mortgaged or pledged as collateral for other loans, we can understand why there was no market for his note. Accordingly, we find that petitioner properly determined that the note was worthless at the end of 1976 and correctly took a deduction therefor on his 1976 return. [8] *205 The fact that petitioner reduced his claim on the note to judgment in December 1979 does not alter our conclusion. First, that the judgment has proved unsatisfiable *206 indicates that petitioner's belief that the debt became worthless in some earlier year was a sound one. New York Water Service Corporation v. Commissioner, 12 T.C. 780, 788 (1949). Second, as we have previously stated, reducing a debt to judgment is not a requirement of deductibility. Third, the suit was instituted at the behest of the respondent himself. Having found that the note from Graham became worthless in 1976, we next must determine whether the note constituted business or nonbusiness bad debt.If an obligation qualifies as business debt, pursuant to section 166(a) and section 166(d), supra, the taxpayer may offset the loss caused by its worthlessness against ordinary income. On the other hand, losses from worthless nonbusiness debts are treated as short-term capital losses, subject to the capital loss provisions of section 1211 and section 1212. Sec. 166(d)(1). Section 166(d)(2) defines nonbusiness debt as a debt "other than (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business." The characterization of a particular *207 debt is a question of fact to be answered from an examination of the relationship that the loss bears to the taxpayer's trade or business. The regulations indicate that the relationship between the loss caused by worthless debt and the taxpayer's trade or business must be a proximate one. Sec. 1.166-5(b), Income Tax Regs.[9] *208 According to United States v. Generes, 405 U.S. 93, 103 (1972), the proper measure for determining whether a bad debt has a proximate relationship to the taxpayer's trade or business is that of "dominant motivation." A determination of dominant motivation is a factual question on which the taxpayer bears the burden of proof. Smith v. Commissioner, 55 T.C. 260 (1970), remanded for reconsideration in light of United States v. Generes, supra, 457 F.2d 797 (5th Cir. 1972), opinion on remand 60 T.C. 316, 318 (1973). In the instant case we must consider whether petitioner's dominant motivation in acquiring the note on the sale of his stock in *209 a law association was related to his trade or business of being an attorney. To phrase the issue as such is to make the answer self-evident. Petitioner's stock in the professional association was a capital asset to him. His investment was not, in itself, a business. Regardless of the acts he may have performed for the law firm while he was affiliated therewith, the note that he took from Graham in connection with the sale of his stock clearly was not connected with his trade or business within the meaning of section 166(d)(2). [10]Mere investment is not a trade or business. See Whipple v. Commissioner, 373 U.S. 193, 202 (1963). As there is no indication in the record that petitioner's loss from the worthlessness of Graham's notes was incurred in a trade or business or was created or acquired in the course of a trade or business, we hold that the note constituted a nonbusiness bad debt. Due to concessions, Decisions will be entered under Rule 155. Footnotes
1. Petitioners are not contesting the deficiency determined for the taxable year ended Dec. 31, 1975. Our decision with respect to petitioners' bad debt deduction for 1976 will affect the petitioners' income averaging calculation for 1977. All other issues relevant to the deficiency for 1977 have been conceded by the parties. In addition, respondent has conceded that petitioners are not liable for the addition to tax under sec. 6653(a) for 1977.
2. Respondent concedes that our determination affects only the timing of the worthless debt deduction because this Court's determination with respect to the years in issue will not bar petitioners from claiming the deduction in a later year. We note with approval, however, the statement of the Court of Claims in Minneapolis, St. Paul & Sault Ste. Marie R.R. Co. v. United States, 164 Ct. Cl. 226 (1964) (13 AFTR 2d 472, 64-1 USTC par. 9213): In making * * * [a determination of wrothlessness] the taxpayer must follow a rule of reason, avoiding alike the Scyllian role of the "incorrigible optimist" and the Charybdian character of the "stygian pessimist." * * * To be deductible, a debt need not be proven worthless beyond all peradventure, since a bare hope that something might be recovered in the future constitutes no sound reason for postponing the time for taking a deduction. * * * The taxpayer is not required to postpone his entitlement to a deduction in the expectancy of uncertain future events nor is he called to wait until some turn of the wheel of fortune may bring the debtor into affluence. [164 Ct. Cl. at 241↩.] 3. As we stated at trial, petitioner's raising of the contention in his pre-trial memorandum gave respondent sufficient notice and opportunity to present evidence on the issue at trial. Therefore, we find that respondent has not been surprised or prejudiced in any way by petitioner's "new" contention.↩
4. Sec. 166 in effect in 1976 provided in pertinent part as follows: SEC. 166. BAD DEBTS. (a) General Rule.-- (1) Wholly worthless debts.--There shall be allowed as a deduction any debt which becomes wortheless within the taxable year. * * * (d) Nonbusiness debts.-- (1) General Rule.--In the case of a taxpayer other than a corporation-- (A) subsections (a) and (c) shall not apply to any nonbusiness debt; and (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. For purposes of sec. 166(d)(1)(B)↩, we note that the holding period for short-term capital gains or losses was changed to 9 months for taxable years beginning in 1977 and to 1 year for taxable years beginning after Dec. 31, 1977.
5. On brief petitioner claimed that he satisfied his burden of proof by putting forth a prima facie case with sufficient evidence from which the trier of fact could infer the worthlessness of the note. Therefore, he contends, the burden of proof should shift to respondent. This position reflects a misapprehension on petitioner's part of where the burden of proof lies. The facts of this case do not give us any reason to stray from our well-established rule in bad debt cases that the petitioner bears the burden of proving worthlessness. See Boehm v. Commissioner, 326 U.S. 287, 294 (1945); Mueller v. Commissioner, 60 T.C. 36, 41 (1973), affd. in part and revd. in part 496 F.2d 899↩ (5th Cir. 1974).
6. The demonstration of an identifiable event is not an absolute prerequisite to a finding of worthlessness. However, a taxpayer must offer some objective evidence of worthlessness in order to sustain his burden. Dallmeyer v. Commissioner, 14 T.C. 1282↩ (1950). 7. See sec. 1.166-2(b), Income Tax Regs., wherein the regulations provide that "[w]here the surrounding circumstances indicate that a debt is worthless and uncollectible and that legal action to enforce payment would in all probability not result in the satisfaction of execution on a judgment, a showing of these facts will be sufficient evidence of the worthlessness of the debt for purposes of the deduction under section 166↩."
8. Respondent relies on Bryan v. Commissioner, 281 F.2d 238 (4th Cir. 1960), affg. 32 T.C. 104 (1959), to support the argument that petitioner's testimony was insufficient to meet his burden of proof. In Bryan, we found that the taxpayer's testimony did not show that the debt became worthless during 1951, and the Court of Appeals agreed that "the Tax Court was not required to accept the taxpayer's unsupported conclusion that the notes were worthless in 1951." 281 F.2d at 243. In this case, however, we have already stated that we believed petitioner's testimony. Furthermore, the circumstances in our case are different from those in Bryan. For instance, in Bryan a note was received in September 1951 with the expectation of repayment and was treated as worthless at the end of that year. In the instant case, the note extended over a period of years during which it is reasonable that the debtor's financial position changed, and assurances of repayment from the debtor were forthcoming only through the end of 1975. We believe that factual differences, coupled with the credibility of the witness in this case, make this case distinguishable from Bryan v. Commissioner, supra↩.
9. Sec. 1.166-5(b), Income Tax Regs., provides in pertinent part as follows: § 1.166-5. Nonbusiness debts.
(b) Nonbusiness debt defined. For purposes of section 166 and this section, a nonbusiness debt is any debt other than-- (1) A debt which is created, or acquired, in the course of a trade or business of the taxpayer, determined without regard to the relationship of the debt to a trade or business of the taxpayer at the time when the debt becomes worthless; or (2) A debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.
The question whether a debt is a nonbusiness debt is a question of fact in each particular case. The determination of whether the loss on a debt's becoming worthless has been incurred in a trade or business of the taxpayer shall, for this purpose, be made in substantially the same manner for determining whether a loss has been incurred in a trade or business for purposes of section 165(c)(1). For purposes of subparagraph (2) of this paragraph, the character of the debt is to be determined by the relation which the loss resulting from the debt's becoming worthless bears to the trade or business of the taxpayer. If that relation is a proximate↩ one in the conduct of the trade or business in which the taxpayer is engaged at the time the debt becomes worthless, the debt comes within the exception provided by that subparagraph. * * * [Emphasis added.]
10. See Haskel v. Commissioner, T.C. Memo. 1980-243↩, wherein we found that the worthlessness of a note that was received on the sale of stock in a corporation constituted nonbusiness bad debt to the taxpayers.