OPINION. Keen, Judge: The two issues remaining before us, both affecting the tax year 1941, are, first, whether respondent erred in determining petitioner’s closing inventory, including parts, for 1941 to be $100,-113.83; and, second, whether respondent erred in disallowing $32,-430.43 of the $42,514.33 added by petitioner in 1941 to his bad debt reserve and claimed in his return as a deduction for bad debts. The first issue is entirely factual, and we have made a finding that the petitioner’s correct closing inventory figure for 1941 was $75,460.37. We are convinced from the evidence that this figure represents cost to petitioner of the items included therein, and the circumstances which led respondent to adopt the higher figure have been reasonably and adequately explained. We therefore conclude that respondent erred in his determination on that issue. The legal aspects of the question concerning the disallowance of the deduction claimed by petitioner for loss growing out of the Moreno transaction are less easily resolved, though the facts which are in the record are substantially undisputed. The agreements with Moreno were made in 1940, and shipments were made periodically thereafter until November of 1941, resulting in the balance due petitioner. In March of 1941, the tax year involved here, although the amount due was by then substantial, petitioner assured himself, after investigation, that the business was being conducted in a profitable manner. At that time a substantial part of the typewriters previously shipped were still on hand in Moreno’s shop, and those which had been sold were sold at a profit. In November of the same year, after he had become worried by the attitude of his creditors toward the Moreno account, petitioner made a second trip to Mexico. It was then that he discovered all the salable machines had been sold, and Moreno had no money, no assets, and no credit with which to pay him. Though petitioner did not sue, he did secure legal advice in anticipation of resorting to that remedy. This advice convinced him that legal action would be fruitless and expensive. The amount then owing by Moreno was $36,033.81, none of which has ever been received. Petitioner charged off the entire account on his books as a bad debt. Being on the reserve system, he charged the amount of this account against his reserve for bad debts, and, at the end of the year, made additions to this reserve. Petitioner, having deducted this item as indicated above, now contends that the transaction was a consignment. Respondent takes the position that petitioner has not established any loss or bad debt arising out of the Moreno account; it is his view that the amount due petitioner, about which there is no dispute, is a debt, but he does not believe it became worthless during the tax year. It is admitted that the transactions were treated on petitioner’s books as completed sales, and that the balance due was charged off as a bad debt and charged against petitioner’s reserve for bad debts. No agreement between petitioner and Moreno was ever reduced to writing. Petitioner referred to the agreement as a consignment in his testimony, but we are of the opinion that he used the term to describe transactions that were essentially completed sales, with provision for deferred payment of the purchase price. The fact that they were recorded as completed sales in petitioner’s books and that promissory notes were executed by Moreno and delivered to petitioner on each occasion when new shipments were made indicates that both parties to the agreement considered the sales to be complete at the time. It is doubtful if petitioner would have placed merchandise of such value in Moreno’s possession without some written agreement evidencing the retention of title in him if he had intended to retain such title, and it seems doubtful also that Moreno would have been willing to execute promissory notes in regular form if he had not regarded himself as presently indebted to petitioner. Petitioner’s reference to his arrangement with the Regal Typewriter Co. as consignment transactions when he quoted the price at which he would buy the machines, and when he was eventually billed for all the machines so purchased regardless of whether they were sold, indicates a conception of the term “consignment” different from the legal import of the term. Considering all the evidence, we are of the opinion that the sales were completed sales, giving rise to a debt. We are also of the opinion that the debt became worthless during the tax year. The institution of litigation where such action is not justified by any hope of collection is not a prerequisite to the allowance of a deduction of a debt for worthlessness. This is recognized both by respondent’s own regulations (Regulation 111, sec. 29.23 (k) (b)) and by the decisions of this Court. Edward K. Johnstone, 17 B. T. A. 366; Cornelia Ann Cunningham, 16 B. T. A. 244. The second reason which led respondent to doubt the worthlessness of the debt was petitioner’s later dealings with Moreno. These have been satisfactorily explained, and do not cast any doubt upon the worthlessness of the account. In the year following the tax year petitioner consummated another sale to Moreno of some specially built Spanish-keyboard typewriters which Moreno had ordered before petitioner’s discovery of his irresponsibility. In the light of his experience petitioner insisted that the freight be paid in advance and cash paid on delivery for the machines. Both demands were met. These facts not only do not evidence any further extension of credit by petitioner to Moreno, but, on the contrary, a request for the credit was unequivocally refused by petitioner. See Anderson-Harrington Coal Co., 6 B. T. A. 759; Hupfel Co., 9 B. T. A. 944. Also, the evidence is uncontradicted that in 1942 petitioner paid two of Moreno’s notes out of his own funds. His purpose was to postpone the necessity of substituting other collateral or of paying off in full the loan for which the notes were pledged. This action on his part can certainly not be interpreted as evidence that the account was not worthless, although the payment of the notes, which had previously been charged off as bad debts, was reflected on petitioner’s books as “Bad debts realized.” The third subsequent event upon which respondent rested his determination that the debt did not become worthless in the taxable year was the advancement by petitioner to Moreno, or, more accurately, to Moreno’s brother, of relatively small sums of money over a period of several weeks to enable the brothers Moreno to remain in New York in an attempt to market an invention which they claimed to own. They proposed that they would pay Moreno’s old debt to petitioner out of the proceeds of the sale if they were successful. It later developed that the Morenos did not own any part of the invention, and petitioner’s hopes of recouping his loss proved groundless. But the fact that he made advancements in connection with a wholly different venture in a later year in the vain hope of realizing something on the earlier account is immaterial, and it does not disprove the worthlessness of the debt. See Thomas J. Avery, 11 B. T. A. 958; Ennis-Brown Co., 10 B. T. A. 1248; Krueger-Broughton Lumber Co., 18 B. T. A. 1270. We conclude, then, in the light of all the evidence, that the debt became worthless in 1941. Since petitioner uses the reserve method, the bad debt was properly charged to that account. There seems to be no dispute that petitioner’s reserves should be in an amount equal to 10 percent of the outstanding accounts and notes receivable. The following statement from respondent’s brief indicates the maimer in which the disputed item affects the petitioner’s tax accounting: The facts are that petitioner had a bad debt reserve at the opening of the taxable year of $27,501.83. After giving effect to certain specific charges against said reserve, respondent allowed the addition of $10,083.91 to bring the reserve up to $32,152.44, which would represent 10% of the outstanding accounts and notes receivable totaling $285,490.59 [petitioner’s books show this amount to be $285,-490.49], plus the $36,033.81 represented in the Moreno accounts and notes receivable. Such a 10% reserve was consistent with petitioner’s prior accounting practice. Respondent therefore disallowed the balance of the bad debt deduction, in the amount of $32,430.43, either as a reasonable addition to petitioner’s reserve to. bad debts or as a debt becoming worthless during the taxable year. It is apparent that our decision on this issue will justify the addition to petitioner’s reserve for bad debts in 1941 of a total amount of $42,514.33, since, after giving what we consider to be the proper treatment to the Moreno account, petitioner’s accounts and notes receivable will amount to $285,490.49 and his reserve for bad debts will show a deficit of $13,965.28. Petitioner has consented to decision in respondent’s favor on the issues relating to the taxable years 1938 and 1939. Reviewed by the Court. Decision will be entered imder Buie 50. Arnold, Tyson, and Hill, //., dissent.