WILLIAM B. GLADSTONE AND ROSLYN GLADSTONE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gladstone v. Commissioner
Docket No. 36942-84
United States Tax Court
T.C. Memo 1990-173; 1990 Tax Ct. Memo LEXIS 199; 59 T.C.M. (CCH) 303; T.C.M. (RIA) 90173; March 29, 1990
Larry Kars, for the petitioners. Jill A. Frisch, for the respondent. WELLS
MEMORANDUM FINDINGS OF FACT AND OPINION WELLS, Judge: Respondent determined a deficiency in petitioners' Federal income tax in the amount of $ 149,941 for the taxable year 1981. After settlement of other issues by the parties, the issues remaining for the Court to decide are: (1) whether certain debts with respect to which petitioners claimed a bad debt deduction are bona fide; (2) whether such debts became *200 worthless in taxable year 1981, and (3) whether such debts are proximately related to any trade or business of petitioner. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners resided at Delray Beach, Florida, at the time the petition was filed. Petitioner William B. Gladstone ("petitioner") is an attorney. Petitioner's 1981 income tax return included two Schedules C. One Schedule C listed the main business activity as "producer" and the product as "oil and gas." The other Schedule C listed the main business activity as "financial services" ("the financial service Schedule C"). The financial service Schedule C filed by petitioner stated the business name as "William B. Gladstone," the address as "4250 D'Este Ct., Lake Worth, Fl. 33463," and the accounting method as "cash," and claimed a bad debt deduction in the amount of $ 150,356. The financial service Schedule C reflected the following income and deductions: INCOME
Gross receipts or sales
$  25,884 Cost of goods sold or operations
- 0 - Total Income
$  25,884 DEDUCTIONS
Bad debts from sales or services
$ 150,356 Dues and publications
362 Insurance
634 Interest on business indebtedness
846 Legal and professional services
33,624 Office supplies and postage
70 Supplies
49 Travel and entertainment
6,843 Utilities and telephone
1,922 Total Deductions
$ 194,706 NET PROFIT OR (LOSS)
($ 168,822)
*201 Petitioner used a business card during taxable years 1979 and 1981 that indicated his address was 196 Hemlock Road, Manhasset, New York, and included his telephone numbers in New York City and Manhasset. In 1972, the Virgin Island Refinery Corporation ("VIRCO") was organized for the purpose of constructing and operating a modern, efficient, and environmentally sound clean petroleum refinery. Gideon Hadary ("Mr. Hadary") was the president of VIRCO. Petitioner was introduced to J. Ross Ziff ("Mr. Ziff" ) by petitioner's business acquaintance, Don Moody ("Mr. Moody"). Mr. Ziff was involved with VIRCO, and petitioner became interested in investing in VIRCO with Mr. Ziff. Consequently, petitioner and Mr. Ziff decided to buy 500 shares of VIRCO stock for $ 250,000. Petitioner and Mr. Ziff were to each purchase 250 shares and petitioner was to lend $ 125,000 to Mr. Ziff for the purpose of purchasing his shares. Mr. Ziff's shares were to serve as collateral for the $ 125,000 loan. On October 2, 1979, in order to purchase the VIRCO stock, petitioner transferred $ 250,000 from his account at Liberty National Bank by wire transfer to the account of Mr. Ziff at Riggs National Bank *202 in Washington, D.C. On October 9, 1979, 500 shares of the stock of VIRCO were issued to Mr. Ziff, 250 of such shares as nominee for petitioner. Subsequently, by check dated December 6, 1979, petitioner lent Mr. Ziff another $ 25,000 for use in obtaining crude oil for the VIRCO refinery. The loans to Mr. Ziff for $ 125,000 and $ 25,000 hereinafter collectively are referred to as the "loans." [1]
Petitioner did not perform a record search with respect to Mr. Ziff prior to making the loans to him in 1979. Prior to making the loans, petitioner did not ask for a financial statement from Mr. Ziff, ascertain whether he owned his home, or request to view copies of his tax returns. Mr. Moody, however, told petitioner that Mr. Ziff was "very affluent, very rich" and that he had a home in Palm Beach. On December 31, 1981, Mr. Ziff signed a "confession of judgment" [2] in the amount of $ 150,000 plus interest. The "confession of judgment," which was handwritten *203 on yellow notepaper, was not notarized. The "confession of judgment" stated that the loans were in default, that Mr. Ziff was not financially capable of satisfying his obligations under the loans, and that he "offers to consent to a judgement on said notes obviating the legal costs in obtaining judgments" with respect to the loans. Petitioner did not take any legal action against Mr. Ziff with respect to the loans. Other than to ask Mr. Ziff to pay, petitioner did not attempt to collect the loans. Petitioner took no steps to protect himself against competing creditors of Mr. Ziff. Mr. Ziff did not file a petition in bankruptcy. Subsequent to 1981, petitioner had contact with Mr. Ziff when Mr. Ziff promoted other "ventures." Petitioner met with Mr. Ziff in 1986 along with Mr. Ziff's attorney, Alphonso Christian ("Mr. Christian"). Petitioner had known Mr. Christian since 1979 in connection with Mr. Christian's representation of VIRCO. Petitioner claimed a bad debt deduction of $ 356 because a check to him from Nick Farris ("Mr. Farris") in the amount of $ 356 bounced. *204 There is no evidence that Mr. Farris was unable to pay petitioner $ 356 in 1981. OPINION Respondent contends that petitioners are not entitled to a bad debt deduction in taxable year 1981 because petitioners have not shown: (1) that the loans were bona fide, (2) that the loans became worthless in taxable year 1981, and (3) that the loans were proximately related to any trade or business conducted by petitioner. Petitioners contend that they have established their entitlement to the bad debt deduction for taxable year 1981 as claimed by them on their 1981 Federal income tax return. As noted above, respondent objected to the admission of certain documents offered by petitioners to corroborate the existence of the loans and their worthlessness; we assume arguendo for the purpose of considering petitioners' arguments that such documents are admissible. We agree with respondent that petitioners have not shown that the debts in question became worthless in taxable year 1981 and therefore need not address respondent's other contentions. Petitioners have the burden of proof. Rule 142(a). *205 [3]
Section 166(a)(1) provides a deduction for debts that become worthless during the taxable year. Whether and when a debt becomes worthless is a question of fact, in which all pertinent evidence is considered, including the value of the collateral, if any, securing the debt and the financial condition of the debtor. Section 1.166-2(a), Income Tax Regs. The burden of proving worthlessness is satisfied when circumstances indicate that a debt is worthless and uncollectible and that legal action to enforce the payment would not in all probability result in satisfaction of the debt. Section 1.166-2(b), Income Tax Regs.
The cases involving the issue of when a debt becomes worthless are as "thick as autumnal leaves that strow the brooks in Vallombrosa." [4] We therefore have abundant instruction as to just what petitioners *206 must prove in the instant case. Only when a debt is without reasonable expectation of future payment is it considered worthless. Hawkins v. Commissioner, 20 T.C. 1069 (1953). Demonstration that the debtor is insolvent is some evidence that the debt is worthless. See Gorman Lumber Sales Co. v. Commissioner, 12 T.C. 1184 (1949). Insolvency, however, is not conclusive evidence that a debt is worthless. Cimarron Trust Estate v. Commissioner, 59 T.C. 195 (1972). Consideration must also be given to the debtor's potential for improving his financial position. Dustin v. Commissioner, 53 T.C. 491, 502 (1969), affd. 467 F.2d 47 (9th Cir. 1972). The fact that the credit of a debtor is not good, and that he does not have sufficient cash or other quick assets to pay his debts immediately, does not necessarily make the debt worthless. Bennett v. Commissioner, 20 B.T.A. 171 (1930); Ernst v. Commissioner, 18 B.T.A. 928 (1930). *207 Where a debtor is solvent in the sense that his assets exceed his liabilities, no bad debt deduction is allowable. Perry v. Commissioner, 22 T.C. 968 (1954); Bennett v. Commissioner, supra.Even if a debtor is shown to be insolvent, worthlessness of the debt is not necessarily established thereby if such debtor is still actively engaged in business. Trinco Industries, Inc. v. Commissioner, 22 T.C. 959 (1954). Although a taxpayer is not required to be an "incorrigible optimist" with respect to the collection of debts owed to him, United States v. White Dental Co., 274 U.S. 398, 403 (1927), neither must a taxpayer be a "Stygian pessimist," Riss v. Commissioner, 478 F.2d 1160 (8th Cir. 1973), affg. on this issue and remanding on another issue 56 T.C. 388 (1971). The mere belief of a taxpayer-creditor that his debtor is in bad financial condition is not adequate evidence that the debt is worthless. Bryan v. Commissioner, 32 T.C. 104, affd. 281 F.2d 238 (4th Cir. 1960). "The decision must be made in the exercise of sound business judgment, based *208 upon as complete information as is reasonably obtainable. Blair v. Commissioner, 91 F.2d 992, 994 (C.A. 2, 1937)," Andrew v. Commissioner, 54 T.C. 239, 248 (1970). On the basis of the record in the instant case, we find that petitioners have failed to meet their burden of showing that the loans became worthless during taxable year 1981. The evidence proffered by petitioners to show that the loans were worthless during the year in issue consists of petitioner's testimony regarding the steps he took to investigate the ability of Mr. Ziff to repay the loans and the "confession of judgment" wherein Mr. Ziff acknowledged his default and his financial inability to repay the loans. We give little weight to the "confession of judgment" as it is a self-serving statement by Mr. Ziff as to his then financial condition rather than objective evidence of Mr. Ziff's inability to pay. As to petitioner's testimony, other than to ask Mr. Ziff to pay, petitioner took no action to collect the loans or to enforce the "confession of judgment," and made little effort to investigate whether Mr. Ziff in fact was in the financial condition that he recited to petitioner. *209 Petitioner's testimony conveys the impression to us that he was casual in his financial dealings with Mr. Ziff. Petitioner only had known Mr. Ziff for a period of one year when he made the first loan to Mr. Ziff to purchase the VIRCO stock. Many of the agreements between petitioner and Mr. Ziff were handwritten. When the loans were made, petitioner made no record search or credit investigation with respect to Mr. Ziff, other than a verbal inquiry made by petitioner to his business acquaintance. When Mr. Ziff defaulted on the loans, petitioner did not take any steps to protect himself against potentially competing creditors of Mr. Ziff. We fail to see why petitioner would not have taken some action to recover on such significant debts or at least have made a significant effort to determine that an attempt at recovery would amount to a waste of effort and money. Petitioner testified that he went to Palm Beach to press Mr. Ziff for payment and concluded that Mr. Ziff's life-style had changed. Petitioner also testified that Mr. Ziff could not pay because he "had nothing going." From such investigation, petitioner concluded that Mr. Ziff could not repay the loans. Such a thin investigation, *210 however, does not satisfy us that Mr. Ziff was unable to repay the loans. We note that Mr. Ziff did not testify at trial. [5]Bryan v. Commissioner, supra at 131 ("The debtor was not called as a witness, and there was no detailed showing as to his financial conditions.") We also note that petitioner did not release Mr. Ziff from his obligation to repay the loans or otherwise settle the debts. Cf. section 1.165-1(d)(2), Income Tax Regs.
Petitioner had additional contact with Mr. Ziff subsequent to taxable year 1981, when Mr. Ziff continued to be involved in other "ventures." Such activity does not depict to us a person *211 who was in severe financial difficulty. Instead, we are left with the impression that Mr. Ziff may not have been in the financial condition asserted in the "confession of judgment." Trinco Industries v. Commissioner, supra at 965. Petitioners cite Purvin v. Commissioner, 6 T.C. 21, 29 (1946), for the proposition that subsequent continued dealings with the debtor do not cast doubt on the worthlessness of the debt. In Purvin, however, the dealings with the debtor were adequately explained and we were able to make findings with respect to the debtor's lack of financial ability to pay. Purvin v. Commissioner, supra at 25. We find the evidence offered by petitioners to be insufficient to support similar findings in the instant case. Moreover, petitioner held Mr. Ziff's stock in VIRCO as collateral for the first $ 125,000 loan. The record is devoid of any objective evidence that the VIRCO stock was worthless and that the collateral, if realized upon, would not have satisfied the loans or some portion of the loans. Section 1.166-2(a), Income Tax Regs. Petitioner testified that he contacted *212 Mr. Christian about the financial condition of VIRCO. Because petitioners did not call Mr. Christian to testify, however, we give little weight to such testimony, as there is no foundation for petitioner's assertion that Mr. Christian had personal knowledge of VIRCO's then-existing financial condition. Petitioner also testified that he tried to sell the stock in VIRCO that he held as collateral for the loans but that there was no market for the stock. We also give little weight to such testimony because the lack of a ready market for stock does not establish its worthlessness. Stevens Bros. Foundation, Inc. v. Commissioner, 39 T.C. 93, 124-125 (1962), affd. on this issue 324 F.2d 633 (8th Cir. 1963). As in Stevens Bros. Foundation, we have not been told of the nature of petitioner's attempted sale, i.e., the price at which the stock was offered. We also note that petitioners did not claim a deduction for any worthless VIRCO stock on their 1981 return, although 250 shares of VIRCO were owned by petitioner. Also noteworthy is the fact that petitioners neither *213 called Mr. Hadary to testify nor offered any information relating to VIRCO's financial condition during taxable year 1981. In sum, we think the record lacks sufficient objective evidence to sustain petitioners' burden of proving that the loans were worthless in taxable year 1981. Accordingly, we hold that there is no basis for allowing the claimed deduction for the loans. Similarly, as there is no proof that Mr. Farris was unable to pay the $ 356 bounced check, there is no basis for claiming a deduction with respect to that amount. We therefore sustain respondent's disallowance of petitioners' bad debt deduction. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Respondent objected to the admission of certain documents offered by petitioners to corroborate the existence of the loans and their worthlessness. Our holding herein obviates the need to rule on respondent's objection.↩
2. The "confession of judgment" is one of the documents mentioned above to which respondent objects.↩
3. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the year in issue and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
4. Milton, Paradise Lost, Book I, line 302 (1667).↩
5. There is a dispute between the parties as to whether Mr. Ziff was available to testify. According to respondent, when respondent's counsel attempted to obtain Mr. Ziff's current address from Mr. Christian, Mr. Christian declined to divulge such information. Petitioner stated that he attempted to locate Mr. Ziff but that Mr. Ziff had moved and petitioner did not have Mr. Ziff's current address or telephone number. Apparently, petitioner did not call Mr. Christian or make any other efforts to locate Mr. Ziff.↩