EARL V. PERRY AND ETHEL M. PERRY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 41247. Filed July 23, 1954.

*Darrow A. Dutcher, Esq.*, for the petitioners.
*Paul D. Lagomarcino, Esq.*, for the respondent.

---

972

OPINION.

BLACK, *Judge:* The major issue we are called upon to decide is whether petitioners are entitled to a $20,000 bad debt deduction in 1949 for money lent to Perry's Flower Shops, Inc., a corporation of which they were majority stockholders, officers, and directors. Respondent makes three contentions:

(1) A business bad debt deduction is not allowable under section 23 (k) (1) of the Code [1] because the debt did not become worthless in 1949. The debt was gratuitously forgiven by petitioners and, therefore, constitutes a capital contribution under section 29.22 (a)–13 of Regulations 111.

(2) If the debt did become worthless, then it is deductible only as a nonbusiness bad debt under section 23 (k) (4), rather than as a business bad debt under section 23 (k) (1).

(3) If the debt did become worthless, no more than $17,264.20 may be deducted by petitioners, since the remainder was offset by the corporation's cancellation of $2,735.80 owed it by petitioners.

In view of our decision it will not be necessary to consider respondent's second and third contentions.

As used in section 23 (k) (1), "worthless" refers to actual worthlessness as determined by objective standards. Whether or not a debt has become actually worthless within a particular taxable year is a question of fact, the burden of proving which rests upon petitioners. *Redman* v. *Commissioner*, (C. A. 1) 155 F. 2d 319. After carefully considering all the facts of record we think it abundantly clear that petitioners have failed to prove that the $20,000 debt owed them by the corporation became worthless in 1949.

The corporation's balance sheet as of December 28, 1949, the date petitioners canceled the $20,000 debt, reveals that there were considerably more than enough assets on hand to pay both petitioners' claim and the claims of all other creditors. In arriving at this conclusion we have eliminated the capital stock account of $30,659.97 from the liabilities listed on the balance sheet, since creditors' claims are superior to those of stockholders. After doing so it is evident that the assets as valued on the balance sheet (which values we have, in the absence of any contrary evidence, found to be correct, see *B. F.*

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \*

(k) BAD DEBTS.—

(1) GENERAL RULE.—Debts which become worthless within the taxable year; \* \* \*

*Edwards*, 39 B. T. A. 735) were sufficient to cover all the corporation's liabilities including the $20,000 debt, to completely wipe out the earned surplus deficit of $9,565.24 as of that date, and to have remaining for the stockholders $21,094.73. We can, therefore, see no distinction between this case and *Mills Bennett*, 20 B. T. A. 171, the pertinent part of the Opinion in which we herewith quote:

The evidence shows that in 1922 the credit of the Bennett Petroleum Corporation was not good and that it did not have sufficient cash or other quick assets to pay its debts to the petitioner. But it had other assets of sufficient value which, so far as we are informed, could have been disposed of for an amount sufficient to satisfy the debt in question. However, the petitioner did not desire to enforce collection for the reason that to do so would compel the Bennett Petroleum Corporation to dispose of its assets, in part at least, which the petitioner feared would eventually result in a loss to him on his stock of the Bennett Petroleum Corporation greater than the amount of the debt. While this course may have been expedient from the petitioner's business standpoint, it did not render the debt worthless. The petitioner's relations to the Bennett Petroleum Corporation were as a creditor and as a stockholder, and the rights of the former status were superior to the rights of the latter. As a creditor he was entitled to have the entire assets of the corporation subject to the payment of his claim before he could participate in these assets as a stockholder, and under these circumstances we are of the opinion that he should not be permitted to charge off as worthless and deduct from income his superior claim and retain the inferior one.

The minutes of the December 27, 1949, meeting of the corporation's board of directors and the petitioners' memorandum of December 28, 1949, canceling the $20,000 debt, both of which are quoted in the Findings of Fact, reveal that petitioners took no action whatever to secure payment of the debt. Those documents also indicate, and such indication is supported by the tenor of petitioners' argument in their reply brief, that petitioners failed to enforce collection because to have done so would have necessitated liquidation of the business and the consequent termination of their stockholder and officer interests therein. Mere nonpayment of a debt does not prove its worthlessness and petitioners' failure to take reasonable steps to enforce collection of the debt, despite their motive for such failure, does not justify a bad debt deduction unless there is proof that those steps would be futile. *New York Water Service Corporation*, 12 T. C. 780; *Thom* v. *Burnet*, (C. A., D. C. Cir.) 55 F. 2d 1039; *George F. Thompson*, 6 T. C. 285, affirmed per curiam (C. A. 2) 161 F. 2d 185; *A. Finkenberg's Sons, Inc.*, 17 T. C. 973; *H. D. Lee Mercantile Co.* v. *Commissioner*, (C. A. 10) 79 F. 2d 391, 393. As we have shown, the corporation had assets from which the $20,000 debt could have been satisfied. The fact that its capital was impaired is, by itself, of no moment. See *James M. Hawkins*, 20 T. C. 1069. In short, where, as here, the debtor corporation was solvent, in the sense that its assets exceeded its liabilities exclusive of proprietorship, no bad debt deduction is allow-

able. *Mills Bennett, supra; Irving L. Ernst*, 18 B. T. A. 928; *First National Bank of Los Angeles et al.*, 6 B. T. A. 850.

We conclude that the $20,000 debt did not in 1949 become "worthless" within the meaning of section 23 (k) (1) of the Code. Petitioners, consequently, are not entitled to a bad debt deduction. The Commissioner's disallowance of the claimed bad debt deduction is sustained. In view of this holding it is unnecessary for us to consider respondent's additional contention that petitioners' cancellation of the debt constituted a capital contribution under section 29.22(a)–13 of Regulations 111.

Petitioners, in their 1949 return, reported a loss of $438.61 from rental of property. Respondent determined that they actually realized a net profit of $882.68 from that activity and, consequently, increased their reported net income for 1949 by $1,321.29. Although the petition contains the general statement that "the whole of this amount [the deficiency] is in dispute" it does not, as is required by Rule 7 (c) (4) (D), (E), Tax Court Rules of Practice, include an assignment of error or any facts applicable to the respondent's determination regarding the rental income. That determination is not, therefore, in issue before this Court since the question of its validity was not appropriately raised in the pleadings. *Camp Wolters Enterprises, Inc.*, 22 T. C. 737.

Section 23 (x) of the Code, as applicable to the taxable year 1949, permits deduction of medical expenses only "to the extent that such expenses exceed 5 per centum of the adjusted gross income." Petitioners deducted medical expenses of $723.42 in their 1949 return. Respondent disallowed that deduction on the ground that it did not represent expenses in excess of 5 per centum of petitioners' adjusted gross income as increased by the disallowance of the $20,000 bad debt deduction and the aforementioned adjustment of rental income. It is evident, in view of our opinion relative to the bad debt and rental income adjustments, that respondent's determination in this respect is correct.

*Decision will be entered for the respondent.*