FOSTER R. BREWER AND DOROTHY B. BREWER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brewer v. Commissioner
Docket Nos. 11590-86, 11067-87
United States Tax Court
T.C. Memo 1992-530; 1992 Tax Ct. Memo LEXIS 553; 64 T.C.M. (CCH) 697; September 8, 1992, Filed *553 Decisions will be entered under Rule 155. For Petitioners: John F. S. Kramer, Don H. Martin, and Chris M. Goodrich. For Respondent: Albert A. Balboni. WHALEN
WHALEN
MEMORANDUM FINDINGS OF FACT AND OPINION WHALEN, Judge: These consolidated cases involve two notices of deficiency in which respondent determined the following deficiencies in and additions to petitioners' Federal income tax: Year
Deficiency
Sec. 6651(a)(1)
1981
$ 116,327.92
$ 29,081.98
1982
250,326.00
62,582.00
Additions to Tax
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661
1981
$ 5,816.40
$ 116,327.92
--   1982
12,854.00
250,326.00
$ 62,582.00
Unless otherwise stated, all section references are to the Internal Revenue Code of 1954, as amended. After concessions by the parties, the issues remaining for decision are: (1) Whether petitioners are entitled to deduct, under section 162, the insurance premiums in the amount of $ 240,287.68 which petitioner, an insurance agent, paid during 1981 on behalf of a customer; (2) whether petitioners are entitled to deduct, under section 166(a), a business bad debt of $ 391,900 on their 1984 return, and whether they are entitled to carry back to *554 1981 the resulting net operating loss; (3) whether petitioners are entitled to deduct, under section 162, certain legal and professional fees paid during 1981; (4) whether petitioners are liable for additions to tax under section 6653(a)(1) and (2) for 1981 and 1982; and,(5) whether petitioners are liable for the addition to tax under section 6661 for the year 1982. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The Stipulation of Facts filed by the parties and attached exhibits are incorporated herein by this reference. Petitioners are husband and wife. They resided in Sugarland, Texas, at the time they filed the subject petitions. In this opinion, we sometimes refer to Mr. Brewer as petitioner. During the years in issue, petitioner was an insurance agent who was licensed by the State of Texas. He was authorized to sell both property and casualty insurance and life insurance. He sold insurance through a sole proprietorship, Foster R. Brewer Insurance. Petitioner reported income and expenses from that business under the cash receipts and disbursements method of accounting. Petitioner was a close personal friend and business associate of Mr. John *555 B. Goss, the president of Mechanical Systems, Inc. (MSI). He had known Mr. Goss since 1960. The two men often referred customers to one another and, at one time, they both owned stock in a small insurance company, Peoples Life Insurance (Peoples Life), located in Waco, Texas. MSI purchased a variety of insurance through Foster R. Brewer Insurance. During 1981, petitioner sold two life insurance policies to MSI. The first policy insured the life of Mr. Goss for $ 6 million. The second policy insured the life of Mr. William D. Morrow, the vice president of MSI, for $ 3 million. Both policies were issued by Mutual Trust Life Insurance Company (Mutual). The gross premium for both policies, that is, the amount necessary to place both policies in effect for the first year, was $ 391,900. Before agreeing to purchase the policies, Mr. Goss informed petitioner that MSI did not have sufficient cash with which to pay the premiums. He told petitioner that he would purchase the policies if petitioner would make the cash available to MSI at a favorable interest rate. Petitioner agreed to borrow the money needed to pay the net premium for both policies, $ 240,287.68, and to lend that *556 amount to MSI. The difference between the gross premium and net premium is the cash surrender value of the policy. In accordance with their agreement, petitioner obtained two loans from Texas Commerce Bank-Stafford, N.A. The first loan was for the principal sum of $ 258,251.62 and bore interest at the annual rate of 17 percent. Petitioner used $ 196,287.44 of the proceeds of this loan to pay the net premium due on the policy insuring Mr. Goss' life. He used the balance of the loan, $ 61,964.18, to pay the net premiums due on two life insurance policies covering himself and his wife. This loan was secured by an assignment of the commissions to be paid on the sale of the three policies. Petitioner repaid the loan several days later when the commissions were paid by Mutual Life. The second loan was for the principal sum of $ 44,000.24 and bore interest at the annual rate of 15.75 percent. Petitioner used the proceeds of this loan to pay the net premium due on the policy insuring Mr. Morrow's life. This loan was also secured by an assignment of the commission to be paid on the sale of the policy and petitioner repaid the loan several days later when the commission was paid by *557 Mutual Life. In return for his payment of the net premiums due on the two policies, MSI gave to petitioner a promissory note, dated September 9, 1981, in the principal amount of $ 391,900, signed by Mr. Goss as president of MSI. The promissory note bore interest at the annual rate of 1 percent. The note provided for "interest payable in one year, both principal and interest payable at maturity and principal two years from this date". The note further provided for the payment of interest on past due amounts at the annual rate of 10 percent. The difference between the gross premiums for the policies, as reflected by the note signed by Mr. Goss, $ 391,900, and the net premiums which petitioner paid on behalf of MSI, $ 240,287.68, equals the cash surrender value of the policies, $ 151,612.32. In approximately 1983 or 1984, petitioner negotiated the sale of the stock of Peoples Life to another stockholder, Mr. John Harris. Under the sales agreement, payment of the purchase price for Mr. Goss' stock was deferred. Mr. Goss was not privy to the negotiations or to the sale contract. He became upset when he learned that he would not receive immediate payment for his stock. In order *558 to maintain Mr. Goss' friendship, petitioner borrowed the money necessary to pay Mr. Goss for his shares of stock in Peoples Life. Neither MSI nor Mr. Goss ever made any payments on the $ 391,900 note. In part, MSI did not make any payments to petitioner because Mr. Goss was angry about the fact that he did not receive cash on the sale of his stock in Peoples Life, as discussed above. When the promissory note became due in 1983, petitioner made several phone calls to Mr. Goss and went to see him personally several times regarding payment. The record does not reveal the number of times petitioner discussed this matter with Mr. Goss or the dates of those discussions. Petitioner never demanded payment in writing. Petitioner never instituted a legal proceeding to enforce payment. MSI went out of business in 1987. No formal bankruptcy proceedings were instituted by the company or its creditors. Rather, an attorney retained by MSI negotiated with creditors of the company for the settlement of its debts. Petitioner was not a party to those negotiations and he did not receive a settlement of the amount which MSI owed to him. Petitioners filed a joint income tax return for 1981. *559 On Schedule C of that return, they reported gross income of $ 476,572 from Mr. Brewer's insurance business. Included in that amount are the commissions earned on the sale of the MSI policies. The record does not reveal the amount of those commissions. On Schedule C, petitioners also reported cost of goods sold of $ 324,686. Included in that amount are the net premiums which petitioner paid to Mutual on behalf of MSI, $ 240,287.68, and the net premiums which petitioner paid to Mutual for the policies on his life and his wife's life, $ 61,964.18. Petitioners' Schedule C reports total deductions for Mr. Brewer's insurance sales business of $ 280,023, including a deduction of $ 22,569 for legal and professional services. The Schedule C reports a net loss from the business in the amount of $ 123,043. In the notices of deficiency issued to petitioners, respondent reduced petitioners' cost of goods sold by $ 240,287.68, the net premiums paid on MSI policies, and by $ 61,964.18, the net premiums paid on the policies covering petitioner and his wife. Respondent also disallowed $ 5,250 of the amount deducted for legal and professional services and determined that petitioners are liable *560 for the additions to tax set forth above. Respondent made numerous other adjustments in petitioners' 1981 and 1982 Federal income tax which were settled by the parties prior to trial. Petitioners' joint income tax return for 1984 filed in October of 1985 does not report a bad debt deduction based upon the uncollectibility of MSI's promissory note. In December 1985, petitioners filed an amended 1984 return on IRS Form 1040X. Petitioners did not include a bad debt deduction on that amended return. In late January or early February 1988, approximately 2 years after receiving respondent's Notice of Deficiency, petitioners filed a second amended tax return for the year 1984 on IRS Form 1040X. The only change on that amended return is the deduction of a business bad debt in the amount of $ 391,900. Based upon that deduction, petitioners increased the net operating loss which they reported for 1984 and they seek to deduct it in 1981 as a net operating loss carryback. OPINION 1. Whether petitioners are entitled to deduct $ 240,287.68 as an expense under section 162(a). The principal issues in this case arise out of petitioner's sales of two life insurance policies to MSI. *561 In connection with those sales, petitioner paid the net premium for both policies on behalf of MSI in the aggregate amount of $ 240,287.68 and received MSI's promissory note in the amount of $ 391,900 in return. The first issue is whether petitioners are entitled to deduct the payments totaling $ 240,287.68 as an ordinary and necessary business expense under section 162(a). Petitioners included that amount in the cost of goods sold reported on Schedule C of their 1981 return. In their petition, they state that "the Respondent further erred in determining that Petitioners' Cost of Goods Sold in the tax year 1981 was overstated". Petitioners now concede that the subject payments are not includable in cost of goods sold, but they argue that they are deductible as an ordinary and necessary business expense pursuant to section 162(a). We note that, in petitioners' pleadings, they did not raise the issue whether petitioners' payments of net premiums on behalf of MSI are deductible under section 162. However, at trial, respondent did not object to petitioners' arguments regarding this issue and, on brief, respondent argues the merits of the section 162 deduction. Accordingly, we *562 agree with petitioners that this issue was tried by express or implied consent of the parties. Rule 41(b)(1), Tax Court Rules of Practice and Procedure. Hereinafter, all Rule references are to the Tax Court Rules of Practice and Procedure. Section 162(a) allows a taxpayer to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". Petitioners bear the burden of proving entitlement to deduct the subject amount under section 162(a). Rule 142(a). In their post-trial briefs, petitioners argue at length that the amount at issue meets the "ordinary" and "necessary" requirements of section 162. Our opinion in this case, however, does not turn on whether the payments in question are ordinary and necessary. Our opinion turns on whether the payments constitute "expenses" to petitioner or whether they are loans or advances to MSI. It has long been settled that when a taxpayer makes expenditures under an agreement to be reimbursed therefor, such expenditures are in the nature of loans or advances and are not deductible as business expenses. Levy v. Commissioner, 212 F.2d 552 (5th Cir. 1954), affirming *563 a Memorandum Opinion of this Court dated Mar. 9, 1953; Flower v. Commissioner, 61 T.C. 140, 151-152 (1973), affd. 505 F.2d 1302 (5th Cir. 1974); Patchen v. Commissioner, 27 T.C. 592, 600 (1956); Glendinning, McLeish & Co. v. Commissioner, 24 B.T.A. 518 (1931), affd. 61 F.2d 950 (2d Cir., 1932); Cochrane v. Commissioner, 23 B.T.A. 202 (1931). In Flower v. Commissioner, supra at 152, we explained: "The reason for not allowing a deduction under the above principle is that the expenditures, being in the nature of advances or loans to a third party, are not expenses of the taxpayer's business." In this case, the evidence is clear that petitioner's payments of insurance premiums on behalf of MSI were made with the expectation of being repaid. Petitioner testified as follows: Q. Okay. In exchange for obtaining these policies for Mechanical Systems, did Mechanical Systems promise to repay the money? A. Oh, yes, sir, or I would not have done it. It would have been an illegal rebate otherwise. Mr. Goss executed MSI's promissory note to petitioner *564 in the amount of $ 391,900. With respect to this note, petitioner testified as follows: Q. Okay. When the note was signed in September of 1981, did you expect to be repaid by Mechanical Systems? A. Completely and fully. We believe the above admissions by petitioner and MSI's promissory note prove that petitioner made the expenditures with an expectation of being repaid. Accordingly, they are in the nature of loans or advances and are not deductible under section 162(a). Petitioners appear to misconstrue respondent's argument that the subject payments on behalf of MSI did not give rise to a deductible expense under section 162(a). Petitioners argue that respondent is "attempting to recharacterize the expense * * * as having not been incurred and advanced in the course of petitioner Foster Brewer's trade or business as an insurance salesman." Petitioners fail to come to grips with the fact that MSI promised to repay petitioner for the same expenditures which petitioners seek to deduct. Indeed, they acknowledge that it was "the clear intent and expectation of the parties to the $ 391,900 Note that such advances would in fact be repaid". (Emphasis supplied.) Petitioners *565 cite Alex v. Commissioner, 70 T.C. 322 (1978), affd. 628 F.2d 1222 (9th Cir. 1980) and Custis v. Commissioner, T.C. Memo. 1982-296, and they argue as follows: There is settled case law authority for the proposition that payment of premiums by an insurance agent for the benefit of clients constitutes an ordinary and necessary expense of an insurance agent's business. Petitioners find something in Alex v. Commissioner, supra, and Custis v. Commissioner, supra, which we do not. In Alex v. Commissioner, supra, the issue was whether the premium rebates paid and discounts given by the taxpayer, an insurance agent, constituted downward adjustments to the agent's gross income on the theory that they represented. adjustments to the purchase price of the insurance policies sold by the agent. We held that they did not. The deductibility of the rebates and discounts under section 162 was not an issue in Alex v. Commissioner, supra.Our opinion notes that "petitioners concede that the deduction is barred by section 162(c)." Alex v. Commissioner, supra at 325. *566 (Fn. ref. omitted.) In Custis v. Commissioner, supra, the taxpayer argued that the premiums which he paid on behalf of his customers were downward adjustments to his gross income or, alternatively, were deductible under section 162. As to the taxpayer's first argument, we agreed with the Commissioner that the case was indistinguishable from Alex v. Commissioner, supra. As to the taxpayer's second argument, we rejected the Commissioner's position that the payments were "illegal payments" within the meaning of section 162(c) because, we held, the Commissioner had failed to prove that the anti-rebate statute in the State of Ohio was "generally enforced". In that case, there was no suggestion that the insurance agent made the premium payments with the expectation that he would be repaid by his customers. That case is clearly distinguishable from this one. Because we hold that the subject expenditures do not come within the ambit of section 162(a), we do not reach respondent's alternative argument that the expenditures are illegal insurance rebates and not deductible by virtue of section 162(c)(2). However, before leaving respondent's *567 alternative argument, we note that, on brief, petitioners contend "that their payments of premiums at issue do not constitute rebates * * * due to the existence of a bona fide debt (i.e., the $ 391,900 note) requiring Mechanical Systems, Inc. to repay Petitioner the net premiums paid on its behalf by petitioner". In effect, petitioners argue that, for purposes of section 162(c), the expenditures were loans to MSI. Clearly, if the subject expenditures were loans, then they are not "expenses paid or incurred" by petitioner and they are not deductible under section 162(a). 2. Whether petitioners can deduct $ 391,900 in 1984 as a business bad debt under section 166 and carry the resulting net operating loss back to 1981. The next issue for decision is whether petitioners are entitled to deduct the principal amount of MSI's promissory note to petitioner, $ 391,900, in 1984 as a bad debt under section 166. Petitioners claim that the note became worthless in 1984, increased a net operating loss for that year, and can be deducted in 1981 as a net operating loss carryback. Petitioners raised this issue by an amendment to their petition. The amendment states as follows: 4.m. *568 The Respondent further erred in failing to allow the carry-back of Petitioner's net operating loss for 1984 pursuant to Section 172(b)(1)(A). Petitioner is unable to state the exact amount of such net operating loss carry-back, because a final 1984 audit report is as yet unavailable. * * * 5.m. During 1984 Petitioners sustained a net operating loss in excess of $ 400,000.00, partially as a result of a bad debt of $ 391,900.00, and Petitioners should be allowed pursuant to Section 172(b)(1)(A) to return said operating loss to tax year 1981 for credit. At the outset, we note that petitioners concede in their reply brief that their tax basis in the note is $ 240,287.68, the amount which they paid for the two MSI insurance policies, and, therefore, they "could not claim any more than this stated basis of $ 240,287.68 as a bad debt loss". They attributed to a "clerical mistake" the fact that their amended return for 1984 claimed the face amount of the note, $ 391,900, as a loss. Based upon this concession, we treat petitioners' claim of a bad debt deduction to be limited to $ 240,287.68. Respondent's first contention is that petitioners failed to prove that MSI's promissory *569 note was a bona fide debt. See sec. 1.166-1(c), Income Tax Regs. We agree with respondent that the testimony of both petitioner and Mr. Goss was vague and possibly inconsistent on certain points. However, they both testified that the debt, as evidenced by MSI's promissory note to petitioner, was a real obligation. Mr. Goss testified that he intended to repay the note and petitioner testified that he expected to enforce the note if it was not paid. The question whether a debtor-creditor relationship existed is a question of fact to be determined from all the evidence. Beaver v. Commissioner, 55 T.C. 85, 91 (1970). Based upon the record in this case, we find that MSI's promissory note to petitioner was a bona fide debt. Respondent's second argument is that petitioners failed to prove that the debt became worthless in 1984. We agree with respondent on this issue. Petitioners, of course, bear the burden of proving that MSI's promissory note became worthless during 1984. Rule 142(a); Perry v. Commissioner, 22 T.C. 968, 973 (1954). Petitioner's testimony about his attempts to collect the debt was vague. He testified that his collection *570 effort consisted of four or five telephone calls and several visits to Mr. Goss. He could not recall any specific times or dates. He never sent a demand letter to either Mr. Goss or to MSI and he never instituted any formal collection efforts. While there is evidence that petitioner's relationship with Mr. Goss and MSI changed in 1984, this was caused by Mr. Goss' anger about the manner in which petitioner handled the sale of his Peoples Life stock. Petitioner has not shown that he was unable to collect the debt, only that he chose not to do so. Furthermore, petitioners failed to introduce any financial records of MSI or other evidence which would reveal the financial ability of MSI to pay the promissory note when it came due on or about September 9, 1983, or which would support petitioners' argument that, by the end of 1984, MSI's financial position was so bleak that it would have been useless to take any action to enforce collection. The fact that MSI continued to operate until 1987 makes it difficult to accept the vague and sometimes evasive testimony of Mr. Goss about MSI's financial condition in 1984. Even in 1987, when MSI went out of business, there is no evidence that *571 petitioner made an attempt to settle his debt with MSI through the attorney hired by MSI to negotiate with creditors at that time. Petitioner's proof leaves open the possibility that he could have collected at least a part of the debt even at that late date. Based upon the above, we hold that petitioners have not shown that they took reasonable steps to collect the subject debt in the amount of $ 391,900, or that the debt was worthless at the end of 1984. E.g., A. Finkenberg's Sons, Inc. v. Commissioner, 17 T.C. 973, 984 (1951). Accordingly, we hold for respondent on this issue. 3. Whether petitioners are entitled to deduct certain legal and professional fees under section 162(a). On Schedule C of their 1981 return, petitioners claimed a deduction in the amount of $ 22,569 for "legal and professional services". In the notice of deficiency, respondent determined that petitioners' deduction for legal and professional fees is limited to $ 17,319. The notice of deficiency states as follows: it has not been established that any amount in excess of that allowed constitutes an ordinary and necessary business expense, was expended for the designated purpose, *572 or is other than organization expenses for newly formed corporations. Accordingly, your taxable income is increased $ 5,250.00 for the 1981 tax year. Petitioners bear the burden of proving their entitlement to deduct the $ 5,250 disallowed by respondent. Rule 142(a). At trial, petitioners introduced into evidence copies of six invoices for legal and accounting fees. The six invoices total $ 4,597.28, but one of the invoices from a certified public accountant, Mr. Mack Riley, in the amount of $ 970 includes a charge for $ 340 which was allowed by respondent and is not in dispute. After subtracting $ 340, the invoices total $ 4,257.28. Petitioner has introduced no evidence to substantiate the difference between the amount disallowed by respondent, $ 5,250, and the amount reflected by the invoices, $ 4,257.28. Accordingly, we sustain respondent's determination as to that difference, $ 992.72. The following is a summary of each of the invoices and a discussion of the deductibility of the expenditure reflected by each invoice. 1. Bonham, Carrington & Fox $ 120.00 FOR LEGAL SERVICES RENDERED 7/1/81 - 7/31/81: Read correspondence regarding Bierworth; Letters and telephone *573 calls to and from Guardian; Photocopy Bylaws, Articles of Incorporation, and Amendment to Articles of Incorporation concerning Peoples Life When questioned at trial about this invoice, petitioner testified that he had no recollection of "Bierworth" and could not state what the invoice was for, other than to point out that the last line makes reference to "amendment to Articles of Incorporation concerning Peoples Life". In any event, petitioner testified that the invoice "was in reference to a personal matter". Accordingly, we sustain respondent's determination as to this item. 2. Webb, Fant & Zimmerman 356.75 FOR LEGAL SERVICES RENDERED during the month of February, 1981, in connection with preparation of Earnest Money Contract, Deed of Trust, Deed and promissory note relating to sale of building in Bellaire to Thomas Young When questioned about this invoice, petitioner testified that it related to a building that he and his wife owned "personally". There is no evidence in the record linking this item to petitioner's business as an insurance agent and petitioners have offered no other basis for deducting it. Accordingly, we sustain respondent's determination as to *574 this item. 3. Bass, Webb et al. 1,500.00 FOR LEGAL SERVICES RENDERED [sic] during the month of October, 1981, in connection with Peoples Life Insurance Company, including meetings with Jack Markman, John & David Harris, draft and review agreements, meetings with John Goss, Milton Choate, various related activities With respect to this invoice, petitioner stated that "This was relative to the block of stock that I personally owned in Peoples Life Insurance Company and the ongoing negotiations with David and John relative to my selling the stock to them." Again, petitioner's testimony fails to show any connection of this item to petitioner's trade or business as an insurance agent and petitioners have offered no other basis for deducting it. We sustain respondent's determination as to this item. 4. Bass, Webb et al. 710.53 FOR LEGAL SERVICES RENDERED in connection with the incorporation of Empezar Confiar, Inc. including preparation and filing of Articles of Incorporation, preparation of Organizational Minutes, Bylaws, Elections of directors and officers, 1244 Stock Plan and stock certificate * * * 5. Mack Riley, CPA 630.00 ($ 970 total less $ 340 allowed) Services *575 requested to set up books properly for the new corporation, properly account for transactions from date of Incorporation, related accounting and tax services Action Brokers - Discussions relating to setting up books * * * 6. Mack Riley, CPA 940.00 SERVICES THROUGH AUGUST 21, 1981: Services requested to setup books properly for the new corporation, properly account for transactions from date of incorporation, related accounting and tax services * * * The above invoices for $ 710.53, $ 630.00, and $ 940.00 all relate to the formation of various corporations owned by petitioner. Petitioners have shown no connection between these expenditures and petitioner's business as an insurance agent. Furthermore, petitioner's testimony is extremely vague about the nature of these items. Accordingly, we sustain respondent's determination with respect to each of the above amounts. 4. Whether petitioners are liable for the negligence additions. Respondent determined that petitioners are liable for the additions to tax under section 6653(a)(1) and (2) for both 1981 and 1982. Section 6653(a)(1) provides for an addition to tax equal to 5 percent of the entire underpayment if *576 "any part" thereof is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) applies to "the portion of the underpayment "which is due to negligence and provides for an addition to tax equal to 50 percent of the interest due on the part of underpayment which is due to negligence. Respondent applied both additions to the entire underpayment for each year. Petitioners agree that they are liable for the addition to tax under section 6653(a)(1) for 1981. They also agree that they are liable for the addition to tax under section 6653(a)(2) for the year 1981 on the portion of the underpayment attributable to the cost of petitioner's personal life insurance policies in the amount of $ 61,964.18, and on the portion of the underpayment attributable to another adjustment determined by respondent, involving a capital gain of $ 28,500 realized from the sale of 50,000 shares of stock of Peoples Life. The issues remain whether petitioners are liable for the addition to tax under section 6653(a)(2) with respect to the rest of the underpayment for 1981, and whether petitioners are liable for the additions to tax under section 6653(a)(1) and (2) for 1982. Petitioners *577 bear the burden of proving that the underpayment for 1982, and each portion of the underpayments for 1981 and 1982 which remain at issue, were not due to negligence or intentional disregard of rules or regulations. See Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 790 (1972). Petitioners limit their discussion of the negligence additions to the "positions taken which remain at issue in this case" or "to deductions or amounts still at issue in this case". The only items which were at issue in this case are (1) the deductibility in 1981 of the net premiums in the amount of $ 240,287.68 and (2) the deductibility of legal and professional expenses in the amount of $ 5,250. In effect, therefore, petitioners present no argument about whether any of the other adjustments determined by respondent in the notice of deficiency are subject to the additions to tax under section 6653(a)(1) and (2). Accordingly, we sustain respondent as to each of the other adjustments determined in the notice of deficiency. Petitioners make four general arguments. First, they argue that the entire record of this case shows that they acted in good faith and that they did not negligently *578 or intentionally disregard rules and regulations. They cite Kilborn v. Commissioner, 29 T.C. 102 (1957), revd. on other issues 2 AFTR 2d 58-5219, 58-2 USTC par. 9847 (5th Cir. 1958), for the proposition that "respondent's determination of negligence was rejected by the Tax Court, in large part because respondent had failed to specify any acts of negligence to which the Court or taxpayer could address itself." Second, petitioners argue that, based on the entire record, they had "substantial authority for all positions taken which remain at issue in this case" and that they only made an honest mistake of law and/or fact. Third, they argue that they were not negligent because they disclosed on their 1981 and 1982 returns "all essential facts * * * from which respondent could make a correct determination of taxes due and owing". Finally, they argue that "the entire record of this case shows that Petitioners exercised all due care" and such due care served to shift the burden of proof on this issue to respondent. We disagree. First, petitioners misperceive their burden of proof. To escape the additions to tax under section 6653, petitioners *579 must prove that no part of the underpayment is due to negligence or intentional disregard of rules and regulations. They are not merely required to negate any specific allegations of negligence made by respondent. The case which they cite, Kilborn v. Commissioner, supra, does not hold that respondent is required to specify the acts of negligence on which respondent relies. In Kilborn, the taxpayers sufficiently rebutted negligence with respect to a particular item which petitioner assumed was the only ground for the negligence addition. The Court sustained the taxpayer because the Commissioner did not argue at trial or on brief that negligence was attributable to any other cause, and the record did not reveal any other negligent acts. See Van Dyke v. Commissioner, T.C. Memo. 1983-190; Beran v. Commissioner, T.C. Memo. 1980-119; Lysyj v. Commissioner, T.C. Memo. 1980-48. In this case, by contrast, petitioners have not shown that they were free of negligence when they included the subject net premiums in the cost of goods sold for 1981. Our opinion in Alex v. Commissioner, 70 T.C. 322 (1978), *580 affd. 628 F.2d 1222 (9th Cir. 1980), suggests otherwise. Similarly, they have not shown that they were free of negligence when they deducted the legal and professional fees disallowed by respondent. Indeed, petitioner's vague testimony as to each of these items provides no basis for deducting any of the subject fees and supports respondent's determination that petitioners acted negligently in deducting them. Second, petitioners have not established that they had "substantial authority for all positions taken which remain at issue in this case". In fact, the opposite is the case. Our opinion in Alex v. Commissioner, supra, holds that section 61(a) requires an insurance agent to include in gross income the full amount of commissions which he earns for his services and that any rebate paid or discount given by the agent to his customer cannot be an adjustment to the selling price as would entitle the agent to exclude the amount from gross income. Nevertheless, contrary to our opinion in Alex v. Commissioner, supra, petitioners reduced their gross income by the net premiums paid on MSI's behalf. As to the deduction *581 of the legal and professional fees at issue, petitioners do not tell us what authority they have in mind and we know of none. Third, petitioners have not shown that they disclosed "all essential facts" on their returns. Moreover, the case on which they rely, Poen v. Commissioner, T.C. Memo. 1979-226, affd. without published opinion 647 F.2d 171 (9th Cir. 1981), is one in which the Commissioner bore the burden of proving the negligence addition. That case is distinguishable from this case in which, as mentioned above, petitioners bear the burden of disproving the negligence addition. Their vague claim to have disclosed all essential facts on their returns, without any specific reference whatsoever to the returns, does not meet that burden. Petitioners have not offered anything to prove that the underpayments were not due to negligence or intentional disregard of rules or regulations. Accordingly, we sustain respondent's determination that petitioners are liable for additions to tax under section 6653(a)(1) and (2) for 1981 and 1982. 5. Whether petitioners are liable for the addition to tax under section 6661. Respondent determined *582 that there is a substantial understatement of income tax for taxable year 1982 and added to the tax for that year an amount equal to 25 percent of the underpayment attributable to the understatement. Petitioners bear the burden of proving that respondent's determination of the addition to tax under section 6661 is incorrect. Rule 142(a); Weis v. Commissioner, 94 T.C. 473, 490 (1990). Petitioners' position on this matter is set forth in their reply brief as follows: Petitioners further contend that the entire record of this case, including, but not limited to, Stipulations, testimony given at trial, and Petitioners' Brief, shows that any issues remaining at issue for the taxable year 1982 are items for which all relevant facts were adequately disclosed in the return, or for which Petitioners had substantial authority. Therefore, Petitioners are entitled, pursuant to I.R.C. § 6661(b)(2)(B)(i) and (ii), to reduce the amount of any understatement which this Court may otherwise find to exist in this case (in addition to that which has already been stipulated; See Stip. 40), by that portion of such understatement which is attributable to the items for which Petitioners *583 had substantial authority, or the items for which the relevant facts were disclosed on the return. Once again, petitioners fail to specifically identify any facts which, they claim, were adequately disclosed on their 1982 return and they fail to identify the "substantial authority" which, they claim, supports the positions taken on their return. Our review of the subject return does not reveal any facts which were adequately disclosed with respect to the adjustments determined by respondent and we are not aware of any authority which supports petitioners' position with respect to any of those adjustments. Accordingly, we sustain respondent's determination of the addition to tax under section 6661 for the year 1982. To reflect the foregoing, Decisions will be entered under Rule 155.