T.C. Summary Opinion 2004-65

UNITED STATES TAX COURT

VINCENT J. BOIDO, JR. AND CHRISTINE P. BOIDO, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3355-03S.                     Filed May 14, 2004.

Vincent J. Boido, Jr., pro se.

Bryan E. Sladek, for respondent.


ARMEN, Special Trial Judge:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect at the time that the petition was filed.[1]  The decision to
be entered is not reviewable by any other court, and this opinion
should not be cited as authority.

_____

[1]  Unless otherwise indicated, all subsequent section
references are to the Internal Revenue Code in effect for 2000,
the taxable year in issue.  All Rule references are to Tax Court
Rules of Practice and Procedure.

Respondent determined a deficiency in petitioners' Federal income tax of $5,543 for the taxable year 2000.

After dismissal of petitioner Christine P. Boido,[2] the issues for decision are: (1) Whether payments totaling $34,352 made by petitioner Vincent J. Boido, Jr. (petitioner) to his former wife are deductible as alimony; and, if not, (2) whether such payments are deductible as a nonbusiness bad debt.[3]

An adjustment to the amount of petitioners' itemized deductions is a purely computational matter, the resolution of which is dependent on our disposition of the disputed issue.

Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits. At the time that the petition was filed, petitioners resided in New Hudson, Michigan.

Before his marriage to petitioner Christine P. Boido, petitioner was married to Rene M. Thiellesen (Ms. Thiellesen).

---

[2] Petitioner Christine P. Boido did not appear at trial and did not execute the stipulation of facts. Accordingly, the Court will dismiss this action as to her. Rule 123(b). However, decision will be entered against petitioner Christine P. Boido consistent with the decision entered against petitioner Vincent J. Boido, Jr., as to the deficiency in tax.

[3] In the notice of deficiency, respondent disallowed one of petitioners' claimed dependency exemptions and increased petitioners' claimed child tax credit. These matters have been resolved by the parties.

Petitioner and Ms. Thiellesen had one child, Nicole R. Boido (Nicole), born November 13, 1987.

On September 20, 1990, petitioner and Ms. Thiellesen were divorced pursuant to a Consent Judgment of Divorce By Withdrawal (divorce decree) entered by the Oakland County Circuit Court of the State of Michigan (the Circuit Court).  With respect to alimony, the divorce decree directed that petitioner:

> shall pay to Plaintiff [Ms. Thiellesen] as alimony the sum of Seven Hundred Fifty ($750.00) Dollars per month, for a period of twenty-four (24) months, from the date of Judgment, and that said alimony payments shall be taxable to Plaintiff and deductible by Defendant, and that at the end of the aforesaid period, alimony payable to either party shall be forever barred. [Emphasis added.]

There has been no subsequent modification to petitioner's alimony obligation to Ms. Thiellesen.  Petitioner timely paid his alimony obligation pursuant to the divorce decree.

With respect to Nicole, the divorce decree granted petitioner and Ms. Thiellesen joint legal and physical custody of Nicole.  The divorce decree also directed petitioner to pay Ms. Thiellesen:

> directly, as support contribution for the minor child [Nicole], the sum of Seventy-Five ($75.00) Dollars per week, or Three Hundred, Twenty-Two ($322.50) Dollars and Fifty Cents per month, for the minor child, until said minor child attains the age of eighteen (18) years or graduates from high school, whichever is later, or until the further order of this Court.

By February 1995, Ms. Thiellesen was destitute.[4]  Ms. Thiellesen approached petitioner and asked him if he "could help her out with some money."  Petitioner agreed to enter into a private agreement with Ms. Thiellesen wherein he would prepay his entire child support obligation due under the divorce decree by 1999, or 6 years early.  At trial, petitioner testified that, at the time of the private agreement, he had a workable relationship with Ms. Thiellesen regarding the best interests of their daughter and that he:

> didn't gain anything by doing this, by giving her [Ms. Thiellesen] the money up front.  It was basically to help her out and see that my daughter was benefitted from this.

Between 1995 and 1999, petitioner paid the total sum of $41,244, including the following:[5]  $6,892 in personal checks to Ms. Thiellesen; $26,000 for a new Dodge truck for Ms. Thiellesen;[6]

---

[4]  Petitioner testified that by this time Ms. Thiellesen had filed for bankruptcy, that she did not have any money, that she was losing her house in which Nicole lived part-time, and that her car had been repossessed.

[5]  The enumerated amounts, which are rounded to the nearest dollar, aggregate less than the total sum of $41,244.  The discrepancy is unexplained in the record.

[6]  In February 1995, petitioner financed the purchase of the truck and made the monthly payments.  It is unclear who is the registered owner of the truck, but petitioner testified that Nicole currently drives the truck.

$1,918 to New Star Insurance;[7] and $6,000 to State Farm Insurance.[8]

Sometime in 1999, Ms. Thiellesen filed a petition with the Circuit Court seeking enforcement of petitioner's $75 weekly child support obligation. On February 15, 2000, the Circuit Court issued an Opinion and Order (order) holding that the parties' private agreement was void and unenforceable because parents may not bargain away a child's right to support. The Circuit Court was not persuaded that the noncash items benefited Nicole as to constitute child support, but held that the checks totaling $6,892 were tantamount to direct payments of child support, which would be credited toward petitioner's outstanding child support obligation. The Circuit Court calculated arrearages against petitioner and then reinstated petitioner's child support obligation.

At trial, petitioner testified that he discussed with his attorney about suing Ms. Thiellesen for restitution in the amount of $34,352, which was calculated as follows: The total amount of payments made pursuant to the private agreement less the amount determined by the Circuit Court as child support; i.e., $41,244 - $6,892 = $34,352. Petitioner's attorney, however, "felt that

---

[7] New Star Insurance provided the insurance coverage for the truck. Petitioner paid the insurance as it came due.

[8] Petitioner paid for an investment fund and a universal life policy for Nicole.

there was nothing to collect" because Ms. Thiellesen "wasn't making much income."

Petitioners timely filed a joint Federal income tax return for 2000 using the cash basis method of accounting.  On their return, petitioners claimed a deduction for alimony payments to Ms. Thiellesen in the amount of $34,352.

In the notice of deficiency, respondent disallowed petitioners' claimed alimony deduction.  Petitioners timely filed a petition with this Court challenging the notice of deficiency.

Discussion[9]

Deductions are strictly a matter of legislative grace, and a taxpayer bears the burden of proving his or her entitlement to the claimed deductions.  Rule 142(a)(1); see New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, 290 U.S. 111, 115 (1933); cf. sec. 7491(a)(2).

Petitioner concedes that he is a cash basis taxpayer.  As such, he may deduct expenditures only in the year paid.  Secs. 446, 461; secs. 1.446-1(c)(1), 1.461-1(a)(1), Income Tax Regs.

A.  Alimony Deduction

The first issue for decision is whether payments totaling $34,352 made to petitioner's former spouse are deductible as alimony.  We hold that they are not.

---

[9]  We need not decide whether sec. 7491, concerning burden of proof, applies in this case because petitioner did not allege that sec. 7491 was applicable, and the issues are essentially legal in nature.  See Higbee v. Commissioner, 116 T.C. 438 (2001).

Section 215(a) allows a deduction for alimony payments paid during the payor's taxable year. Section 215(b) defines alimony as payment which is includable in the gross income of the recipient under section 71. Section 71(b) provides a four-step inquiry for determining whether a cash payment is alimony. Section 71(b) provides:

> SEC. 71(b). Alimony or Separate Maintenance Payments Defined.--For purposes of this section--
>
> (1) In general.--The term "alimony or separate maintenance payment" means any payment in cash if--
>
> (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
>
> (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,
>
> (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and
>
> (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

Accordingly, if the payment made by petitioner fails to meet all of the four enumerated criteria, that payment is not deductible as alimony by petitioner.

Based on the record, we find that the payments do not constitute alimony under section 215. The alimony provision in the divorce decree required petitioner to pay alimony to Ms. Thiellesen for only 24 months starting in September 1990 and ending in September 1992, which petitioner paid accordingly. The payments at issue were made well after September 1992 and were made pursuant to the 1995 private agreement rather than the divorce decree. In addition, most (if not all) of the payments in question were made before 2000, the taxable year in issue, and, therefore, would not be deductible in 2000. Finally, and most fundamentally, the payments in question were purportedly made as child support, which is neither alimony nor deductible as such. See sec. 71(c). Therefore, we hold that petitioner is not entitled to an alimony deduction for payments totaling $34,352 that he made to Ms. Thiellesen.

B. <u>Bad Debt Deduction</u>

At trial, petitioner argued, in the alternative, that the payments in question are deductible as a nonbusiness bad debt. We hold that they are not.

Section 166(d) provides that a taxpayer may deduct, as a short-term capital loss, a nonbusiness debt that becomes worthless within the taxable year.[10]  See sec. 1.166-5(a)(2), Income Tax Regs.  First, the debt must be a bona fide debt; namely, "a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money."  Sec. 1.166-1(c), Income Tax Regs.  The existence of a bona fide debt is a factual inquiry that turns on the facts and circumstances of the particular case, and the taxpayer bears the burden of proving that a bona fide debt existed.  Rule 142(a); Dixie Dairies Corp. v. Commissioner, 74 T.C. 476, 493 (1980); Litton Bus. Sys., Inc. v. Commissioner, 61 T.C. 367, 377 (1973).

Second, the debt must be wholly worthless.  Sec. 1.166-5(a)(2), Income Tax Regs.  Whether or not a debt has become worthless within a particular year is a question of fact, and the taxpayer bears the burden of proving that the debt became worthless in that year.  Redman v. Commissioner, 155 F.2d 319, 320 (1st Cir. 1946), affg. a Memorandum Opinion of this Court dated May 15, 1945; Perry v. Commissioner, 22 T.C. 968, 973 (1954).  "Where the surrounding circumstances indicate that a

---

[10]  Assuming arguendo that the payments in question gave rise to a debt, then such purported debt is a nonbusiness debt because it was not created or acquired in connection with petitioner's trade or business.  See sec. 166(d)(2).

debt is worthless and uncollectible and that legal action to enforce payment would in all probability not result in the satisfaction of execution on a judgment, a showing of these facts will be sufficient evidence of the worthlessness of the debt." Sec. 1.166-2(b), Income Tax Regs. No deduction is allowed for a debt so long as any part of the debt is recoverable during the taxable year. Sec. 1.166-5(a)(2), Income Tax Regs.

Petitioner contends that he has a valid and enforceable claim against Ms. Thiellesen under the equitable doctrine of unjust enrichment, and that this claim was wholly worthless in the year 2000.[11] On the other hand, respondent contends that petitioner only has an unadjudicated and unliquidated claim against Ms. Thiellesen because he failed to obtain a judgment against her.[12] Respondent further contends that, if the Court finds that petitioner has a legal claim against Ms. Thiellesen, the claim was not wholly worthless because petitioner could recover the truck from Ms. Thiellesen under a constructive

---

[11] Petitioner seeks restitution on the basis of unjust enrichment, which is a form of equitable relief. See <u>Dumas v. Auto Club Ins. Association</u>, 473 N.W.2d 652, 663 (Mich. 1991); Restatement, Restitution, sec. 1 (1937).

[12] Generally, a claim arising out of a breach of contract, prior to being reduced to judgment, does not create such a debtor-creditor relationship because the injured party has only an unliquidated claim for damages. <u>Lewellyn v. Elec. Reduction Co.</u>, 275 U.S. 243, 246 (1927); <u>Proesel v. Commissioner</u>, 77 T.C. 992, 1002 (1981) (and cases cited therein).

trust.[13]  We turn to Michigan law to determine whether petitioner's assertion of the doctrine of unjust enrichment gives rise to a valid and enforceable claim against Ms. Thiellesen.

A person who has been unjustly enriched at the expense of another is required to make restitution to the other.  Estate of McCallum v. First State Bank, 395 N.W.2d 258, 261 (Mich. Ct. App. 1986); Restatement, Restitution, sec. 1 (1937).  The process of imposing a "contract-in-law" to prevent unjust enrichment is an activity which courts should approach with some caution. Estate of McCallum v. First State Bank, supra.  Under Michigan law, the essential elements of a claim for unjust enrichment are: (1) Receipt of a benefit by the defendant from the plaintiff, (2) which benefit it is inequitable that the defendant retain.  Id. The plaintiff making a claim for unjust enrichment must establish the nature of the transaction and the character of the liability arising therefrom as a prerequisite to his right to recover. Booker v. City of Detroit, 668 N.W.2d 623, 627 (Mich. 2003).  The mere fact that a person benefits another is not of itself sufficient to require the other to make restitution on a theory

---

[13]  Generally, a constructive trust allows the court to impose a trust for the benefit of one person over assets owned by another.  Kent v. Klein, 91 N.W.2d 11, 14 (Mich. 1958).  For purposes of the requirement of worthlessness, respondent focuses on the truck.  The record is unclear, however, as to who is the registered owner of the truck.  We note that Nicole currently drives the truck.

of unjust enrichment.  <u>Estate of McCallum v. First State Bank</u>, <u>supra</u>.

Petitioner contends that a debt arose when the Circuit Court held that the private agreement between petitioner and Ms. Thiellesen was void and unenforceable because parents may not bargain away a child's right to support under Michigan law.  See Mich. Comp. Laws Ann. sec. 722.3 (West 2002); <u>Wiersma v. Wiersma</u>, 217 N.W. 767, 768 (Mich. 1928); <u>Ballard v. Ballard</u>, 198 N.W.2d 451, 452 (Mich. Ct. App. 1972).  Petitioner argues that he paid a total of $41,244 as purported child support pursuant to the private agreement, but that the Circuit Court characterized only $6,892 of the total payments as tantamount to child support, calculated arrearages against petitioner, and then reinstated petitioner's $75 weekly child support obligation.  As a result, petitioner contends that the payments were not intended as a gift, but were advance payments to Ms. Thiellesen.  Petitioner thus claims that Ms. Thiellesen is unjustly enriched because he relied on her "to uphold her end of their contract, which she failed to do, resulting in Petitioner having to pay for a second time the amount of $34,352.00" as child support pursuant to the Circuit Court's order, and, therefore, he is entitled to restitution in the amount of $34,352.  We disagree.

There is no doubt that Ms. Thiellesen benefited from receipt of at least certain of the noncash advance payments.  At the time, Ms. Thiellesen was destitute and her car had been repossessed.  Based on the record, however, we are not convinced that it is <u>inequitable</u> for Ms. Thiellesen to retain the advance payments just because she will receive the same amount as future child support.  Up until the decision of the Circuit Court, petitioner and Ms. Thiellesen had a workable relationship regarding the best interests of their daughter.  At the time, petitioner intended the advance payments to "help out" Ms. Thiellesen and to benefit Nicole given Ms. Thiellesen's financial situation.  But to petitioner's dismay, the advance payments were not characterized as tantamount to child support, and he was further required by State law to continue paying child support.  Thus, the essence of petitioner's argument is that he now has to pay double child support.  We find petitioner's argument unpersuasive.

Although the advance payments were held not to be tantamount to child support, the intended benefits of the advance payments were to ensure that Nicole lived in a good environment while in Ms. Thiellesen's custody.  Specifically, petitioner bought Ms. Thiellesen a new truck in order for her to provide Nicole with transportation while in her custody.  Under the circumstances, we find that petitioner made the advance payments as a father

concerned for the welfare of his daughter. The fact that the advance payments were not adjudged to be child support is not sufficient to show that it is inequitable for Ms. Thiellesen to retain the advance payments. Thus, we find that Ms. Thiellesen was not unjustly enriched by receipt of the noncash items from petitioner, and, therefore, petitioner does not have a valid and enforceable claim against Ms. Thiellesen.

C. <u>Conclusion</u>

We have considered all of the other arguments made by the parties, and, to the extent that we have not specifically addressed them, we conclude they are without merit.

In view of the foregoing, we sustain respondent's determination.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>An order dismissing</u>

<u>petitioner Christine P. Boido</u>

<u>for lack of prosecution and</u>

<u>decision for respondent will</u>

<u>be entered</u>.