T.C. Memo. 2004-213

UNITED STATES TAX COURT

TIBOR GUENTHER HORWATH and CHRISTEL HORWATH, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16927-02.            Filed September 21, 2004.

Tibor Guenther Horwath and Christel Horwath, pro sese.

Dustin M. Starbuck, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, Judge:  Respondent determined the following deficiencies in, and accuracy-related penalties under section 6662(a) on, petitioners' Federal income tax (tax):

| Year | Deficiency | Accuracy-Related Penalty |
|------|-----------|--------------------------|
| 1997 | $58,427.00 | $7,157.80 |
| 1998 | 45,435.00 | 6,824.40 |

The issues remaining for decision are:

(1) Are petitioners entitled for each of the taxable years at issue to the depreciation deduction that they claim?  We hold that they are not.

(2) Are petitioners entitled for the taxable year 1998 to a deduction of $14,686 for travel expenses?  We hold that they are not.

(3) Are petitioners liable for each of the taxable years at issue for the accuracy-related penalty under section 6662(a)[1]?  We hold that they are.

                    FINDINGS OF FACT

Most of the facts have been stipulated and are so found.

Petitioners resided in Falmouth, Virginia, at the time they filed the petition in this case.

In 1988, petitioners formed TG&C Associates, Inc. (TGC), an S corporation, that at all relevant times provided consulting services to various corporate and government entities.  At all relevant times, TGC's principal place of business was located in petitioners' residence.

During the taxable years at issue, petitioners were the only two stockholders of TGC.  For each of the taxable years at issue, each petitioner had a zero basis in the TGC stock that each

_____

[1]All section references are to the Internal Revenue Code (Code) in effect for the years at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

owned.

During the taxable years at issue, petitioner Tibor Guenther Horwath (Mr. Horwath) occasionally provided consulting services as a sole proprietorship known as "Tibor G. Horwath, Consulting" (Tibor Horwath Consulting).

Claimed Depreciation Deductions

On June 24, 1992, TGC entered into contract DASG60-92-C-0069 (1992 contract) with the United States Army Strategic Defense Command (SDC). During the course of the 1992 contract, SDC paid TGC a total of $1,049,117.

The 1992 contract provided in pertinent part with respect to the specific tasks to be completed pursuant to that contract:

The following specific tasks will be performed under the proposed program:

Phase I:

(1) Design and construct an experimental SSPG [small spinning projectile guidance] seeker and associated laboratory setup for open loop performance evaluation of the concept against computer generated and recorded, single and multiple target and background images.

(2) Evaluate the performance of the SSPG seeker for various target and background conditions, including the presence of detector noise.

(3) Determine performance limits for the SSPG seeker in terms of minimum detectable line of sight motion to the target, and its ability to extract target feature information.

(4) Conduct analysis to determine valid parameter ranges for follow-on simulation effort, and attempt to define projected hardware implementations.

(5) Prepare an interim report of the findings and recommendations.

Phase II:

(1) Adapt the open loop SSPG seeker laboratory experiment for interfacing with a 6-DOF flight dynamics computer code for a hardware in the loop simulation.

(2) Design and construct a line of sight (LOS) processor to extract guidance information from the SSPG seeker output signals.

(3) Modify and update the existing 6-DOF flight dynamics code to include rapid spin and nutation, and optimize the code for interface with the line of sight processor and other relevant laboratory hardware.

(4) Assemble the hardware in the loop simulation model using the above components, debug and calibrate, and perform simulation runs against simulated single and multiple target and background images.

(5) Transfer the hardware and software of the simulation effort to the KHILS facility, interface with the KHILS equipment and conduct simulation against typical strategic and theater missile defense scenarios.

(6) Conduct a top level projectile design, defining a basic configuration, essential parameters like mass, moments, ballistic characteristics, and guidance and control, for various potential applications.

(7) Prepare an interim report and material

for a briefing to the Government.

Phase III:

     (1)  Conduct an analysis effort aimed at determining the optimum selection of field test conditions, scaling of parameters and target representations, and prepare a test plan.

     (2)  Design and construct an experimental guided SSPG test vehicle and launcher to be used in field tests.

     (3)  Repackage and miniaturize the laboratory SSPG seeker and line of sight processor and integrate into the test vehicle, together with thrusters, solenoid valves and cold propellant reservoir.

     (4)  Define specific parameters of the field experiment by using the hardware in the loop simulation model adapted for the characteristics of the experimental test vehicle.

     (5)  Conduct field tests with various targets and test conditions and document and analyze test data.

     (6)  Prepare a final report for the entire effort and put together a briefing for the Government.

The 1992 contract provided in pertinent part with respect to certain contract data requirements:

CONTRACT DATA REQUIREMENTS LIST

\*      \*      \*      \*      \*      \*      \*

1)  A001  2)  Funds & Man-hour Expenditure Report

\*      \*      \*      \*      \*      \*      \*

16)  First report due 15 calendar days after first full accounting period.  Submissions will include both the

formatted report and a columned report reflecting the time-phased expenditure and forecast, on a cumulative basis by month, through the period of performance. A formatted report and columned report will be submitted for the total contract. Graphic plots are not required.

1) A002  2)  Contract Funds Status Report

   *      *      *      *      *      *      *

16)  First report due 15 days after first full accounting period. Columns 2-10 of blocks 12, 13, & 14 will be headed to show a 6-month "Rolling Window" followed by remaining projections by FY. "Rolling Window" is defined as a projection for each of the next 6 months from the reported date. This will be followed by a projection for remaining month by fiscal year.

1) A003  2)  Innovations Report

   *      *      *      *      *      *      *

16)  Submit draft Innovations Report MLT 2 months after identification to address in BLK 6. Government comments will be provided in 15 days: update and distribute within 15 days.

   *      *      *      *      *      *      *

1) A005  2)  Quarterly Progress Report

   *      *      *      *      *      *      *

16)  Initial report is to cover period ending first 3 months following contract award. Report is due 15 days after completion of each quarters effort. When report is presented orally, provide copies of viewgraphs and narratives to attendees.

1) A006  2)  Scientific & Technical Reports Summary

   *      *      *      *      *      *      *

16)  Submit final draft 60 days prior to end of the contract. The government comments will be provided within 30 days. A final version shall be delivered at

EOC.  The contractor shall identify, control, and document any hazards and control procedures associated with the process and include this documentation in the final report.  Any design, modeling, and hardware resulting from this effort shall become government property.

Pursuant to the 1992 contract, TGC, inter alia, designed and constructed a computer simulator (computer simulator) that consisted of a large calibrated star display, various computers, a precision spin and positioning platform for seeker hardware, assorted electronic devices, and special software developed for controlling that equipment.  After TGC completed the testing and analysis required by the 1992 contract, TGC was to transfer the computer simulator and associated software to a United States government facility in Florida for further testing.

On May 14, 1996, TGC entered into contract DASG60-96-C-0042 (1996 contract) with SDC.  Pursuant to the 1996 contract, TGC was to use the computer simulator, when completed, to study various technical matters related to strategic intercept with low-cost precision intercept devices.  Pursuant to that contract, SDC was to pay TGC a total of $8,169,616.

On or about December 17, 1996, TGC completed the design, construction, and testing of the computer simulator.  The computer simulator was not transferred at that time or any other time to the United States government facility in Florida.

On November 6, 1997, petitioner Christel Horwath (Ms. Horwath) executed on behalf of TGC a document entitled "Contrac-

tor's Release and Assignment" (1997 release) with respect to the 1992 contract. The 1997 release provided in pertinent part:

> Pursuant to the terms of Contract No. DASG60-92-C-0069 [1992 contract] and in consideration of the sum of One Million Fourty [sic] Nine Thousand One Hundred Seventeen Dollars and NO cents ($1,049,117.00) which has been or is to be paid under said contract with TG&C Associates, Inc. (hereinafter called "the Contractor") or its assignees, if any, the Contractor, upon payment of said sum by the UNITED STATES OF AMERICA (hereinafter called "the Government"), does hereby:

> 1.    Remise, release and discharge the Government, its officers, agents, and employees of or from all liabilities, obligations, claims, and demands, whatsoever, under or arising from the Contract * * *

At the time the 1992 contract was terminated, the computer simulator was the property of TGC. During the taxable years at issue and continuing until the time of trial in this case, the computer simulator was located in the basement of petitioners' residence.

On February 18, 1998, TGC filed a formal complaint with the Missile Defense Command concerning improper disclosure of TGC's proprietary data.

On May 27, 1998, SDC notified TGC by letter that it was terminating the 1996 contract pursuant to that contract's limitation of funds clause. As of that date, SDC had paid TGC only $1,015,805 of the original contract amount of $8,169,616.

On March 31, 1999, TGC entered into a contract (1999 contract) with the United States Army Armament Research, Develop-

ment, and Engineering Center Tank-Automotive and Armaments Command, Armament Research, Development, and Engineering Center located at Picatinny Arsenal. Pursuant to the 1999 contract, TGC was to modify the computer simulator in order to accommodate tactical projectiles and perform tests in order to make it possible to evaluate smart munitions technology.

TGC entered into additional contracts after the 1999 contract that required TGC to use the computer simulator.

Claimed Travel Expense Deduction

During the taxable years at issue, TGC had a contract (Primex contract) with Primex Technologies, Inc. (Primex) under which TGC was to provide consulting services to Primex. TGC retained Tibor Horwath Consulting (i.e., Mr. Horwath) and Ms. Jean P. Smith (Ms. Smith) to provide to Primex on TGC's behalf the consulting services required by the Primex contract. The services that Mr. Horwath and Ms. Smith were to provide to Primex on TGC's behalf required Mr. Horwath and Ms. Smith to travel extensively. Primex agreed to pay TGC for such travel expenses.

Pursuant to the Primex contract, TGC sent Primex an invoice every month. Each such invoice reflected, inter alia, a separate category labeled "Expenses by Dr. Tibor G. Horwath" and "Expenses by Jean P. Smith", which listed the respective travel expenses paid by Mr. Horwath and Ms. Smith in providing to Primex on TGC's behalf the consulting services required by the Primex contract.

TGC treated as income all payments that it received from Primex pursuant to the Primex contract, including payments for the respective travel expenses of Mr. Horwath and Ms. Smith.

During 1998, Mr. Horwath paid $16,812 in travel expenses in connection with providing to Primex on TGC's behalf the consulting services required by the Primex contract. Mr. Horwath was entitled to a reimbursement by TGC for those travel expenses. Mr. Horwath chose not to be reimbursed by TGC for the travel expenses that he paid in 1998.

Petitioners' Tax Returns

Petitioners filed Form 1040, Individual Income Tax Return (Form 1040), for each of the taxable years at issue, which Ms. Horwath prepared. (We shall refer to Forms 1040 that petitioners filed for taxable years 1997 and 1998 as petitioners' 1997 return and petitioners' 1998 return, respectively.) In petitioners' 1997 return, petitioners claimed for the first time a depreciation deduction with respect to the computer simulator when in Schedule C, Profit and Loss from Business (Schedule C), of that return (Mr. Horwath's 1997 Schedule C), they claimed such a deduction of $75,250. In Form 4562, Depreciation and Amortization (Form 4562), relating to Mr. Horwath's 1997 Schedule C, petitioners claimed a basis of $215,000 in the computer simulator. The $215,000 basis in the computer simulator that petitioners claimed in Form 4562 represented their best estimate of the

replacement cost of that simulator.  In Schedule C of petition-

ers' 1998 return (Mr. Horwath's 1998 Schedule C), petitioners

claimed a depreciation deduction of $57,100 with respect to the

computer simulator and a deduction of $16,812 for the travel

expenses that Mr. Horwath paid in 1998.

Notice of Deficiency

On August 1, 2002, respondent issued to petitioners a notice

of deficiency (notice) with respect to their taxable years 1997

and 1998.  In that notice, respondent determined, inter alia,

that petitioners are not entitled to the depreciation deductions

of $75,250 and $57,100 claimed with respect to the computer

simulator in petitioners' 1997 return and petitioners' 1998

return, respectively.  Respondent also determined in the notice,

inter alia, that petitioners are not entitled to $14,686 of the

$16,812  deduction that petitioners claimed for the travel

expenses that Mr. Horwath paid in 1998.[2]  Respondent further

determined in the notice that petitioners are liable for each of

the taxable years at issue for the accuracy-related penalty under

---

[2]Petitioners claimed a deduction of $16,812 for travel
expenses in petitioners' 1998 return.  Respondent allowed $2,126
of that amount.  The record does not disclose why respondent
allowed $2,126 of the claimed $16,812 travel expenses.  The
parties stipulated that the entire amount of travel expenses
(i.e., $16,812) was paid by Mr. Horwath in connection with
providing to Primex on TGC's behalf the consulting services
required by the Primex contract.  (We shall refer to the $14,686
in travel expense that respondent disallowed in the notice as Mr.
Horwath's 1998 travel expenses.)

section 6662(a).

## OPINION

Petitioners bear the burden of proving that the determinations in the notice are erroneous.[3]  See Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

<u>Claimed Depreciation Deductions</u>

Petitioners no longer contend that they are entitled to the respective depreciation deductions that they claimed in petitioners' 1997 return and petitioners' 1998 return.  That is because, according to petitioners:  (1) SDC transferred the computer simulator to TGC by gift; (2) SDC's alleged gift of the computer simulator to TGC was a gift to petitioners as the stockholders of TGC for purposes of determining any depreciation deductions allowable with respect to that simulator; (3) pursuant to section 1015(a), petitioners' basis in that simulator for such purposes is SDC's cost of, and thus its basis in, that simulator; and (4) SDC's cost of, and thus its basis in, the computer simulator

---

[3]The parties do not address the application of sec. 7491(a) or (c) in the instant case.  Petitioners filed petitioners' 1997 return on or about Aug. 15, 1998, and petitioners' 1998 return on or about July 16, 1999.  We presume that respondent's examination of those returns began after July 22, 1998, and that sec. 7491(a) and (c) is applicable in the instant case.  However, petitioners do not argue that the burden of proof shifts to respondent under sec. 7491(a).  Even if petitioners had advanced such an argument, they have not established that they have complied with the applicable requirements of sec. 7491(a)(2).  Under the circumstances presented here, we conclude that the burden of proof does not shift to respondent under sec. 7491(a).

is the amount that SDC paid to TGC pursuant to the 1992 contract, i.e., $1,049,117, and not the $215,000 that petitioners claimed in Form 4562 relating to Mr. Horwath's 1997 Schedule C.

Respondent disagrees with the foregoing contentions of petitioners. However, respondent appears to agree with petitioners, albeit for reasons different from those advanced by them, that petitioners, as the stockholders of TGC, would be entitled to any depreciation deductions for the taxable years at issue with respect to the computer simulator that the Court were to allow. In support of that position, respondent asserts on brief:

> during the years at issue, petitioners were the only shareholders of TG&C; thus, they controlled the computer simulator and the depreciation deduction would have flowed through to them. Thus, the net effect on petitioners is the same whether the depreciation deduction is taken on Schedule C or flowed through to them.
> * * *

On the record before us, we reject the foregoing position of respondent as contrary to section 1366(d)(1). Section 1366(d)(1) provides:

> SEC. 1366. PASS-THRU OF ITEMS TO SHAREHOLDERS
>
>     *     *     *     *     *     *     *
>
>     (d) Special Rules for Losses and Deductions.--
>
>         (1) Cannot exceed shareholder's basis in stock and debt.--The aggregate amount of losses and deductions taken into account by a shareholder under subsection (a) for any taxable year shall not exceed the sum of--
>
>             (A) the adjusted basis of the shareholder's stock in the S corporation (deter-

mined with regard to paragraphs (1) and
(2)(A) of section 1367(a) for the taxable
year), and

(B) the shareholder's adjusted basis of
any indebtedness of the S corporation to the
shareholder (determined without regard to any
adjustment under paragraph (2) of section
1367(b) for the taxable year).

For each of the taxable years at issue, each petitioner had
a zero basis in the TGC stock that each owned.[4]  Respondent is
thus wrong in asserting on brief that the "net effect on peti-
tioners is the same whether the depreciation deduction is taken
on Schedule C or flowed through to them [from TGC, an S corpora-
tion]."

We turn now to petitioners' position that for purposes of
determining any depreciation deductions allowable with respect to
the computer simulator "TG&C is an S-corporation, [and] the
simulation equipment, which was a gift for [sic] the company,
represents a gift to its stockholders."  As support for petition-
ers' position, petitioners point to section 25.2511-1(c)(1) and
(g)(1), Gift Tax Regs.[5]  Petitioners' reliance on those regula-

---

[4]Petitioners do not contend, and the record does not estab-
lish, that for each of the taxable years at issue they had any
basis in any indebtedness of TGC to them.

[5]Petitioners may have intended to rely on sec. 25.2511-
1(h)(1), Gift Tax Regs., and not sec. 25.2511-1(g)(1), Gift Tax
Regs., for their position that any gift of the computer simulator
that SDC made to TGC was a gift to petitioners as the stockhold-
ers of TGC.  Our response to any such reliance by petitioners on
sec. 25.2511-1(h)(1), Gift Tax Regs., is the same as our response
(continued...)

tions is misplaced.  Section 25.2511-1(c)(1) and (g)(1), Gift Tax Regs., deal only with the Federal gift tax and do not support petitioners' position that for Federal income tax purposes they are entitled to the depreciation deductions that they are claiming with respect to the computer simulator.

Assuming arguendo that any gift of the computer simulator by SDC to TGC were to be treated as a gift of that simulator to petitioners for Federal gift tax purposes, it does not follow that petitioners, as the stockholders of TGC, are entitled to depreciation deductions for Federal income tax purposes with respect to that simulator.  A stockholder:

> is not usually entitled to a depreciation deduction for property owned by his corporation because he has no direct economic interest or investment in the property. * * * Where the corporation is the owner of the property and uses it in its business, the corporation, not the stockholders, is entitled to the depreciation deduction.

Hunter v. Commissioner, 46 T.C. 477, 490 (1966).

On the record before us, we find that, assuming arguendo that we were to accept petitioners' arguments that SDC transferred the computer simulator to TGC by gift and that any such gift to TGC represented a gift for Federal gift tax purposes to petitioners as the stockholders of TGC, petitioners have failed to establish that they are entitled for the taxable years at

---

[5](...continued)
set forth below to their reliance on sec. 25.2511-1(c)(1) and (g)(1), Gift Tax Regs.

issue to the respective depreciation deductions that they are claiming with respect to that simulator.[6]

For the sake of completeness, we shall address whether, assuming arguendo (1) that SDC transferred the computer simulator to TGC by gift and (2) that any such gift is treated as a gift to petitioners for purposes of determining petitioners' entitlement for the taxable years at issue to depreciation deductions with respect to that simulator, petitioners have established the amounts of such depreciation deductions to which they are entitled. Petitioners argue that their basis in the computer simulator under section 1015(a) is SDC's basis in that simulator, i.e., SDC's cost of that simulator. According to petitioners, SDC's cost of, and thus its basis in, the computer simulator was $1,049,117, the amount that SDC paid to TGC pursuant to the 1992 contract, and not the $215,000 that petitioners claimed in Form 4562 relating to Mr. Horwath's 1997 Schedule C.[7]

On the record before us, we reject petitioners' argument. Section 167(c) provides in pertinent part: "The basis on which

_____

[6]The record establishes that at the time the 1992 contract was terminated around Nov. 6, 1997, the computer simulator was the property of TGC. Assuming arguendo that SDC transferred the computer simulator to TGC by gift, the record does not establish that TGC owned the computer simulator prior to the termination of the 1992 contract.

[7]The $215,000 that petitioners claimed as their basis in the computer simulator in Form 4562 represented petitioners' best estimate of the replacement cost of that simulator.

exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the adjusted basis provided in section 1011".  As pertinent here, section 1011(a) defines the term "adjusted basis" as the basis determined under section 1012, adjusted as provided under section 1016, and section 1012 provides that the basis of property is its cost.  Section 1016(a)(2) provides in pertinent part that adjustments in respect of property shall be made, inter alia, to the extent of the amount of depreciation deductions allowed for that property.  Section 1015(a) provides in pertinent part that if "property was acquired by gift after December 31, 1920, the basis shall be the same as it would be in the hands of the donor".

Assuming arguendo (1) that SDC transferred the computer simulator to TGC by gift, (2) that any such gift is treated as a gift to petitioners for purposes of determining petitioners' entitlement for the taxable years at issue to depreciation deductions with respect to that simulator, and (3) that petitioners' basis in the computer simulator under section 1015(a) is SDC's cost of, and thus its basis in, that simulator, we must determine SDC's cost of that simulator.

Petitioners contend that SDC's cost of the computer simulator is the amount that SDC paid to TGC pursuant to the 1992 contract (i.e., $1,049,117).  On the record before us, we reject that contention.  SDC paid $1,049,117 to TGC pursuant to the 1992 contract for all of the work that TGC performed under that

contract. The work that TGC was to perform under the 1992 contract included 18 discrete tasks, only one of which was to design and construct the computer simulator. Other tasks required TGC, inter alia, to perform tests, to analyze the results from those tests, to design and construct a test vehicle and launcher, and to prepare various reports for SDC.

On the record before us, we find that, assuming arguendo (1) that SDC transferred the computer simulator to TGC by gift, (2) that any such gift is treated as a gift to petitioners for purposes of determining petitioners' entitlement for the taxable years at issue to depreciation deductions with respect to that simulator, and (3) that petitioners' basis in the computer simulator under section 1015(a) is SDC's cost of, and thus its basis in, that simulator, petitioners have failed to establish that the amount that SDC paid to TGC pursuant to the 1992 contract (i.e., $1,049,117) is SDC's cost of, and thus its basis in, the computer simulator. See secs. 1011(a) and 1012. On that record, and making those assumptions arguendo, we further find that petitioners have failed to carry their burden of establishing (1) how much of the amount (i.e., $1,049,117) that SDC paid to TGC pursuant to the 1992 contract was paid for the design and construction of the computer simulator[8] and therefore was SDC's

_____

[8]The record contains a so-called funds and man-hour expenditure summary (expenditure summary) which detailed the amounts
(continued...)

cost of, and basis in, that simulator, see secs. 1011(a) and 1012, or (2) any other basis in that simulator, see sec. 1.1015-1(a)(3), Income Tax Regs.

On the record before us, we find that, assuming arguendo (1) that SDC transferred the computer simulator to TGC by gift, (2) that any such gift is treated as a gift to petitioners for purposes of determining petitioners' entitlement for the taxable years at issue to depreciation deductions with respect to that simulator, and (3) that petitioners' basis in the computer simulator under section 1015(a) is SDC's cost of, and thus its basis in, that simulator, petitioners have failed to carry their burden of establishing that they are entitled for the taxable years at issue to the depreciation deductions that they are claiming with respect to that simulator.

---

[8](...continued) that TGC expended as of September 1996 pursuant to the 1992 contract. The amounts detailed in the expenditure summary were for categories such as "DIRECT LABOR" (e.g., costs for 4880 Senior Technologist man-hours, costs for 2475 Mathematician man-hours) and "CONSULTANTS". The expenditure summary did not show how much of those amounts TGC expended for the design and construction of the computer simulator and how much of those amounts TGC expended to complete the other tasks that it was obligated to perform under the 1992 contract. In addition, the expenditure summary indicated that as of September 1996 TGC spent a total of $9,925 on "MATERIALS". The expenditure summary did not indicate how much of that amount TGC expended on materials for the computer simulator and how much TGC expended on materials that it needed to complete the other tasks that it was obligated to perform under the 1992 contract.

Claimed Travel Expense Deduction

Petitioners argue that Mr. Horwath's 1998 travel expenses are deductible under section 162(a) as ordinary and necessary business expenses because Mr. Horwath paid those travel expenses while performing consulting services for TGC. Respondent counters that petitioners are not entitled to a deduction for Mr. Horwath's 1998 travel expenses because Mr. Horwath was entitled to a reimbursement by TGC for such expenses, which Mr. Horwath elected not to request.

On the record before us, we agree with respondent. A taxpayer is not entitled to a deduction for expenses to the extent that such taxpayer is entitled to be reimbursed for such expenses but does not claim such reimbursement. See Levy v. Commissioner, 212 F.2d 552, 554 (5th Cir. 1954), affg. a Memorandum Opinion of this Court dated Mar. 9, 1953; Universal Oil Prods. Co. v. Campbell, 181 F.2d 451, 475 (7th Cir. 1950); see also Lucas v. Commissioner, 79 T.C. 1, 7 (1982); Kennelly v. Commissioner, 56 T.C. 936, 943 (1971), affd. without opinion 456 F.2d 1335 (2d Cir. 1972); Stolk v. Commissioner, 40 T.C. 345, 356 (1963), affd. per curiam 326 F.2d 760 (2d Cir. 1964); Podems v. Commissioner, 24 T.C. 21, 22-23 (1955); Roach v. Commissioner, 20 B.T.A. 919, 925-926 (1930). Mr. Horwath was entitled to a reimbursement by TGC for Mr. Horwath's 1998 travel expenses. However, he chose not to be reimbursed for those expenses.

On the record before us, we find that petitioners have failed to establish that they are entitled to a deduction for the taxable year 1998 for Mr. Horwath's 1998 travel expenses.

Accuracy-Related Penalty

Respondent argues that petitioners are liable for each of the taxable years at issue for the accuracy-related penalty under section 6662(a) because of negligence or disregard of rules or regulations under section 6662(b)(1) or a substantial understatement of income tax under section 6662(b)(2).

Respondent has the burden of production under section 7491(c) with respect to the accuracy-related penalty under section 6662(a).[9]  To meet that burden, respondent must come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty.  Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

For purposes of section 6662(a), the term "negligence" includes any failure to make a reasonable attempt to comply with the Code, and the term "disregard" includes any careless, reckless, or intentional disregard.  Sec. 6662(c).  Negligence has also been defined as a lack of care or failure to do what a reasonable person would do under the circumstances.  Leuhsler v. Commissioner, 963 F.2d 907, 910 (6th Cir. 1992), affg. T.C. Memo. 1991-179; Antonides v. Commissioner, 91 T.C. 686, 699 (1988),

---

[9]See supra note 3.

affd. 893 F.2d 656 (4th Cir. 1990).

The record establishes that petitioners used the estimated replacement cost for the computer simulator in determining the respective depreciation deductions claimed with respect to that simulator in petitioners' 1997 return and petitioners' 1998 return.  The record also establishes that petitioners took a deduction for Mr. Horwath's 1998 travel expenses in petitioners' 1998 return even though Mr. Horwath was entitled to a reimbursement by TGC for such expenses, which he chose not to claim.

With respect to the respective depreciation deductions relating to the computer simulator that petitioners claimed in petitioners' 1997 return and petitioners' 1998 return, assuming arguendo that petitioners were not negligent in claiming that they, as the stockholders of TGC, were entitled to such depreciation deductions, the basis that they claimed in Form 4562 relating to Mr. Horwath's 1997 Schedule C in determining those depreciation deductions, namely, the estimated replacement cost of that computer simulator, has no support in the Code, the regulations, or the caselaw.  See secs. 167(c), 1011, 1012; secs. 1.167(a)-1(a), 1.1011-1, 1.1012-1(a), Income Tax Regs.; Meredith Corp. & Subs. v. Commissioner, 102 T.C. 406, 423 (1994); Dumont-Airplane & Marine Instruments, Inc. v. Commissioner, 28 T.C. 1308 (1957).

With respect to the deduction for Mr. Horwath's 1998 travel

expenses that petitioners claimed in petitioners' 1998 return, that deduction is not supported by the Code, the regulations, or the caselaw. See sec. 162(a); sec. 1.162-1(a), Income Tax Regs.; Levy v. Commissioner, supra at 554; Universal Oil Prods. Co. v. Campbell, supra at 475.

On the record before us, we find that respondent has satisfied respondent's burden of production under section 7491(c) with respect to the accuracy-related penalties under section 6662(a) determined in the notice.

The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment if it is shown that there was reasonable cause for, and that the taxpayer acted in good faith with respect to, such portion. Sec. 6664(c)(1). The determination of whether the taxpayer acted with reasonable cause, or in good faith, depends on the pertinent facts and circumstances, including the taxpayer's efforts to assess such taxpayer's proper tax liability, the knowledge and experience of the taxpayer, and the reliance on the advice of a professional, such as an accountant. Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioners argue that they had reasonable cause for, or acted in good faith in, claiming the respective depreciation deductions in petitioners' 1997 return and petitioners' 1998 return with respect to the computer simulator because that simulator was a unique piece of equipment, and petitioners'

estimate of the replacement cost of the computer simulator was reasonable. On the record before us, we reject petitioners' argument. Petitioners were in a unique position to know SDC's cost of, and thus its basis in, the computer simulator. That is because they, acting on behalf of TGC, designed and constructed that simulator and carried out the other work that TGC performed for SDC under the 1992 contract. Assuming arguendo that petitioners were not negligent in claiming that they, as the stockholders of TGC, were entitled to the respective depreciation deductions in petitioners' 1997 return and petitioners' 1998 return, on the record before us, we find, for the reasons set forth above in our discussion of the basis under section 167(c) on which a taxpayer may claim a depreciation deduction, that petitioners did not have reasonable cause for, or act in good faith in, using the estimated replacement cost of the computer simulator in calculating such depreciation deductions.

Petitioners advance no argument that they had reasonable cause for, or acted in good faith in, claiming a deduction for Mr. Horwath's 1998 travel expenses in petitioners' 1998 return. In any event, petitioners knew that Mr. Horwath was entitled to a reimbursement by TGC for Mr. Horwath's 1998 travel expenses and that Mr. Horwath chose not to be reimbursed by TGC for such expenses. On the record before us, we find that petitioners have failed to establish that they had reasonable cause for, or acted

in good faith in, claiming a deduction for Mr. Horwath's 1998 travel expenses in petitioners' 1998 return.

On the record before us, we find that petitioners have failed to show that they were not negligent and did not disregard rules or regulations within the meaning of section 6662(b)(1), or otherwise did what a reasonable person would do, with respect to the underpayment for each of the taxable years at issue. On that record, we further find that petitioners have failed to show that they acted with reasonable cause, or in good faith, with respect to each such underpayment. See sec. 6664(c)(1). On the record before us, we find that petitioners have failed to establish that they are not liable for the accuracy-related penalty under section 6662(a) for each of the taxable years at issue.[10]

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.[11]

---

[10]We have found that petitioners are liable for each of the taxable years at issue for the accuracy-related penalty under sec. 6662(a) because of negligence or disregard of rules or regulations under sec. 6662(b)(1). In light of that finding, we shall not address respondent's alternative argument that petitioners are liable for each of the taxable years at issue for the accuracy-related penalty under sec. 6662(a) because of a substantial understatement of income tax under sec. 6662(b)(2).

[11]Petitioners advance certain contentions and arguments relating to the ownership of the computer simulator and SDC's alleged transfer by gift of the computer simulator to TGC. We do not address those contentions and arguments because, even if we were to accept them, on the instant record we nonetheless reject

(continued...)

To reflect the foregoing and the concessions of petitioners,

<u>Decision will be entered for</u> <u>respondent</u>.

---

[11](...continued)
petitioners' position that they are entitled to the depreciation deductions claimed with respect to the computer simulator for the taxable years 1997 and 1998.